**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael ALTENBURGER, Defendant-Appellant.**

No. 76–3241.

United States Court of Appeals, Ninth Circuit.

March 4, 1977.

Rehearing Denied March 31, 1977.

Federal Public Defender, Thomas W. O'Toole, Phoenix, and Jo Ann D. Diamos, Asst. Public Defender, Tucson, Ariz., argued, for defendant-appellant.

Daniel G. Knauss, Asst. U. S. Atty., Tucson, Ariz., argued for plaintiff-appellee.

Before BARNES and KILKENNY, Circuit Judges, and EAST, District Judge.*

## OPINION

BARNES, Senior Circuit Judge:

Defendant appeals from a jury conviction of violating 18 U.S.C. § 1992: a knowing and wilful "attempt to disable, derail or wreck a train employed by the Southern Pacific Railroad in interstate commerce."

Plaintiff was observed at about 8:30 p. m. by a patrolman for the railroad placing "items" on the railroad track on the east bound main line. The patrolman testified he stopped defendant, read to him his Miranda rights, and asked defendant what he was doing there. Defendant said he was trying to derail a train (R.T. 16–18).[1] (Defendant told his own expert witness, Dr.

Hoogerbeets, he "suddenly and impulsively planned to derail a train." R.T. II, p. 13.) The patrolman then removed the "items" from the track—several 2 × 6 and 4 × 4 posts, a steel grate, pieces of plywood, and several rocks 6 to 12 inches in diameter. After arresting defendant, the patrolman took photographs of the "items" (Govt. Exs. 1, 2, 3 and 4 thru 9).

A Southern Pacific engineer testified that the items placed on the tracks were capable of derailing the train (R.T. 48–54). An express train, Los Angeles to East St. Louis, was due to pass over the tracks where the items were placed approximately one hour after they were so placed.

Appellant took the stand and denied he received Miranda warnings, although he had previously admitted receiving them in detail when questioned on the hearing on objections to admissions (R.T. II, p. 21). The court found he had been properly warned.

Appellant had filed a "Notice of Defense of Insanity," and the government countered with a motion to have a pre-trial psychiatric examination. This was granted, and Dr. Estes examined appellant for the government, and Dr. Hoogerbeets for appellant.

The latter testified appellant had sufficient substantial capacity to appreciate the wrongfulness of his conduct, but "there was doubt in his mind that appellant could conform his conduct to the requirements of the law (R.T. 57–65); that defendant believed he was morally justified and that his actions were governed by impaired thinking; that defendant was competent to stand trial; that he diagnosed defendant as "a border-line psychotic," which "is not an official diagnosis." (R.T. 62).

In rebuttal, Dr. Estes testified his opinion was that the defendant did not lack substantial capacity to appreciate the wrongfulness of his conduct; and that de-

---

\* The Honorable William G. East, Senior District Judge, District of Oregon, sitting by designation.

1. All references are to Vol. III of the Reporter's Transcript of the trial, unless reference is made to another volume.

fendant *was* able to conform his actions to the requirements of the law.[2]

A motion for acquittal was made after the government rested, and denied. A motion for new trial (based on newly discovered evidence) was made after conviction. Oral testimony was heard, and the motion denied.

Appellant raises but two issues on his appeal:

■ (1) Was the evidence sufficient to find defendant intended to derail a train?

No case is cited in support of appellant's position on this point. At trial defendant did not take the stand, nor did any percipient witness testify on his behalf. His medical expert testified defendant had a grudge against society; wanted "to get even" with people generally, and knew his attempt to derail was wrong. This is a strong showing of intent. That he could intelligently have perhaps picked a more remote and darker, place to obtain his revenge (as urged by his counsel), surely does not prove his lack of intent to do what he did. Applying *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find no reason not to affirm the jury's (and the trial judge's) implicit finding of the defendant's intent to derail the railroad train.

■ (2) Was the evidence insufficient to find defendant competent?

In support of this point, appellant seeks to argue from and rely upon testimony heard on the motion for new trial based on newly discovered evidence.[3] No appeal is before us from the denial of the motion for a new trial.[4] Appellant's legal argument

slips just as readily from this circuit's language in *Wade v. United States*, 426 F.2d 64 (9 Cir. 1970), to the discussion of delusions in *United States v. McGraw*, 515 F.2d 758, 760 (9th Cir. 1975); and *United States v. Sullivan*, 544 F.2d 1052 (9th Cir. 1976) when no reference had been made in the record of the trial before us to delusions, save by appellant's counsel's suggestive questions, or the prosecutor's attempts at clarification. (R.T. 99, lines 4–14). An objection to questions about delusions was sustained by the trial judge on that specific basis; *i. e.*, that no expert mentioned them. Without a case cited, or any logical argument, appellant's brief (p. 15) states:

"Clearly, Dr. Estes was limiting his opinion as to the capacity of the defendant to that of having a lack of substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements as the result of a delusion." (Opening Brief, p. 15)

This was not Dr. Estes' testimony. He had, in fact, testified directly to the contrary, although counsel for appellant frequently attempted to convince the expert that defendant had "delusions." For example, counsel for defendant asked Dr. Estes the direct question about any delusions defendant might have had (R.T. 96, 11–15), and six times Dr. Estes replied "I feel quite certain about, that he was not deluded." (R.T. 96, 16–17, 19, 21–24, and R.T. 97, 3–4, 8–10). The trial judge agreed that the doctor said he found no delusions (R.T. 99, 102).

As to defendant's substantial capacity to appreciate the wrongfulness of his conduct in attempting to derail the train, Dr. Estes spelled his opinion out quite clearly,[5] and

---

**2.** Defense sought to ask hypothetical questions of Dr. Estes which were not based on facts or medical opinions in evidence. Objections were made to such questions and were properly sustained. (R.T. 89–100).

**3.** C.T. 55. This was evidence of a *post trial* presentence report conversation between a probation officer, Ms. Mungo (not a doctor of medicine) which, if of any value, was cumulative and impeaching only, and which specifically did not change Dr. Estes' opinion after he heard Ms. Mungo's testimony that defendant

said "he day dreams, fantasies, and 'contabulations'." Vol. IV, 16–19; 21–22.

**4.** C.T. 69.

**5.** "He knew that it was against the law. He knew that it was generally accepted by people as a thing that shouldn't be done. He knew that it would, it could endanger lives, would endanger lives and could hurt somebody. He knew that it would damage property and cost the company some money. He knew that he would be apprehended and possibly punished. I think these are the elements." (R.T. 100, 13–19).

stated that the defendant *could conform* his conduct to the requirements of the law (R.T. 82–83; 102, lines 9–11). Apparently, the trial judge believed the government's expert testimony, and did not believe that presented by the defendant's expert.

Again, we hold that the evidence of defendant's competency, whether viewed under *Glasser* or otherwise, clearly supports the jury's findings of guilt, as well as the court's subsequent denial of a new trial.

Finding no merit in the issues raised by appellant, we AFFIRM the conviction.