865 F.2d 94
 130 L.R.R.M. (BNA) 2299
 UNITED STATES of America, Plaintiff-Appellee,
v.
Arnold Ray HEIGHTLAND (88-5209), Donnie Thornsbury
(88-5213), David Thornsbury (88-5215), and James
Darryl Smith (88-5216), Defendants- Appellants.
 Nos. 88-5209, 88-5213, 88-5215, 88-5216.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 29, 1988.
Decided Jan. 6, 1989.
Rehearing Denied in Nos. 88-5213 and 88-5215 Feb. 28, 1989.
 
 1
 Louis DeFalaise, U.S. Atty., Thomas L. Self, Asst. U.S. Atty., Office of the U.S. Atty., Lexington, Ky., William C. Brown (argued), Dept. of Justice, Criminal Div., Washington, D.C., for U.S.
 
 
 2
 Edwin J. Walbourn, III (argued), Hermansdorfer & Templeton, Ashland, Ky., for Heightland.
 
 
 3
 Before ENGEL, Chief Judge; BOGGS, Circuit Judge; and McRAE, Senior District Judge.*
 
 
 4
 McRAE, Senior District Judge.
 
 
 5
 Defendants-appellants were convicted under 18 U.S.C. Sec. 33, of having willfully damaged, with reckless disregard for the safety of human life, a motor vehicle "used, operated, or employed" in interstate commerce. For the reasons stated below, we affirm the convictions.
 
 I.
 
 6
 Prior to 1983, the four appellants were union-member employees of a coal mine in a remote area of Pike County, Kentucky, owned and operated by the Sharondale Corporation ("Sharondale"). In October 1983, however, Sharondale shut down its operations at the mine and laid off its employees. Approximately one year later, the mine reopened under the management of Samoyed Energy ("Samoyed").
 
 
 7
 Samoyed operated the mine with non-union employees who had been laid off from other Samoyed mines in the surrounding area. As a result of not rehiring the former Sharondale employees, the union, of which defendants were members, declared a selective strike and established picket lines at the mine.
 
 
 8
 After picketing proved to be largely ineffective, the defendants escalated their efforts to stop Samoyed's operations. On the morning of May 29, 1985, the defendants ambushed two coal trucks with high powered rifles resulting in the death of one of the drivers.
 
 
 9
 The trucks were owned by P & S Trucking Co., which was hired by Samoyed to haul the coal from the mine to a tipple facility some twenty minutes away near Belfry, Kentucky, where the coal was loaded on railroad cars and shipped to Roanoke, Virginia, through Williamson, West Virginia. At the time of the attack, the trucks were returning to the mine from the tipple after the coal had been unloaded.
 
 
 10
 Following a jury verdict convicting them, defendants moved the district court for acquittal based on their contention that the coal trucks were not being "used, operated, or employed" in interstate commerce. The district court denied the motion and entered judgment against the defendants. 678 F.Supp. 159.
 
 II.
 
 11
 The sole issue presented in this appeal is whether the coal trucks attacked by the defendants were motor vehicles being "used, operated, or employed" in interstate commerce within the meaning of 18 U.S.C. Sec. 33 ("Section 33").
 
 
 12
 Appellants contend that in order to establish a violation of Section 33, the motor vehicle itself must be traveling in interstate commerce at the time of the damage. We disagree and hold that it is not necessary for the motor vehicle to be traveling from one state to another when attacked, for a violation of Section 33 to occur.
 
 
 13
 In United States v. Kurka, 818 F.2d 1427 (9th Cir.1987), the case construing Section 33 cited by appellants, the court upheld the convictions in a fact situation wherein the vehicle damaged was traveling from Oregon to California. The dispositive issue in Kurka, however, was whether "willful" damage to motor vehicles is an essential element of the crime proscribed by Section 33. Therefore, neither the district nor the circuit courts were called upon to determine the scope of the phrase, "used, operated, or employed in interstate ... commerce." Because of the dearth of case law construing the interstate commerce phraseology of Section 33, it is helpful to view parallel statutes.
 
 
 14
 Appropriate parallel statutes to consider are 18 U.S.C. Sec. 32 ("Section 32") and 18 U.S.C. Sec. 1992 ("Section 1992"). Section 32 makes it illegal to damage an airplane "used, operated, or employed" in interstate commerce. Section 1992 makes it illegal to damage a train "used, operated, or employed" in interstate commerce. Both of these statutes use the exact language pertaining to interstate commerce as does Section 33. Both of these statutes put the emphasis on conduct directed towards a vehicle rather than conduct pertaining to goods.
 
 
 15
 Appellants have cited cases construing Sections 32 and 1992. In each of these cases, the statutes were said to apply where the plane or train itself had been traveling in interstate commerce on the day of the violation. In United States v. Altenburger, 549 F.2d 702 (9th Cir.1977), the court, in holding that Section 1992 applied, mentioned that the train was traveling from California to Illinois. In construing Section 32, the court in United States v. Hume, 453 F.2d 339 (5th Cir.1971), found that a plane was "operating" in interstate commerce where, on the day the plane was damaged while crop dusting in Texas, it had been dusting in New Mexico in the morning of the same day.
 
 
 16
 Appellants urge that the above cases mandate that the vehicle be moving from one state to another in order for the vehicle to be considered "used, operated, or employed" in interstate commerce. Nowhere in these cases does a court say that a plane or train must be traveling from one state to another for it to be considered "used, operated, or employed" in interstate commerce. In United States v. Hume, the court explained the wording of Section 32, which is the same as Section 33, as follows:
 
 
 17
 The wording of the statute makes it clear that Congress intended not only to protect civil aircraft while actually operating in interstate commerce, but also to protect such aircraft as is used or employed in interstate commerce, and also the parts, materials and facilities used by such aircraft. 453 F.2d at 340.
 
 
 18
 Senate Report No. 98-225, U.S.Code Cong. & Admin.News 1984, p. 3182, contains legislative history which explains what Congress intended when it brought about the 1984 amendment to the definition of the term motor vehicle in 18 U.S.C. Sec. 31. That amendment made the facts of this case applicable to Section 33 in 1985. The Senate Report provides:
 
 
 19
 Present Federal law, 18 U.S.C. Sec. 33 ... does not reach the destruction or damage of a truck which carries only cargo, not passengers. Another statute proscribes the actual or attempted destruction of cargo moving in interstate commerce, but is limited to the cargo itself, not the truck. Thus, there is no Federal statute proscribing, for example, the shooting at a truck and damaging it with intent to hurt or kill the driver, an occasional occurrence during certain labor disputes and at other times. The Committee believes there is a Federal interest in vindicating these offenses which often take place in remote areas where State law enforcement may not be effective. Moreover, there is a definite Federal interest in keeping open the channels of interstate commerce in which trucks play a critical role. (emphasis supplied) 1984 U.S.Code Cong. and Adm.News at 3500.
 
 
 20
 In the instant case, the proof supports a finding that the P & S Trucking Co. vehicles at the time of the attacks, were being used, operated, and employed as the first phase of the truck-train interstate journey from Pike County, Kentucky, to Roanoke, Virginia. Congress used three different verb forms to identify the vehicles included in Section 33; therefore, even if "operated" is given the narrower interpretation of transportation between the states at the time of the attack, the vehicles clearly were being "used" and definitely were being "employed" in interstate commerce.
 
 
 21
 The judgments of the district court of conviction are affirmed.
 
 
 
 *
 The Honorable Robert M. McRae, Jr., Senior United States District Judge for the Western District of Tennessee, sitting by designation