81 F.3d 170
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond Sander AINGE, Defendant-Appellant.
 No. 94-10589.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 12, 1996.
Decided April 2, 1996.
 
 Before: SCHROEDER, D.W. NELSON, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Raymond Sander Ainge appeals his jury conviction on three counts of drug activity on board a vessel subject to the jurisdiction of the United States in violation of the Maritime Drug Law Enforcement Act, 46 U.S.C.App. § 1903 ("MDLEA"); one count of conspiracy to possess with intent to distribute, and conspiracy to distribute, hashish in violation of 21 U.S.C. §§ 841(a) & 846; one count of possession with intent to distribute hashish in violation of 21 U.S.C. § 841(a); and one count of conspiracy to import hashish into the United States in violation of 21 U.S.C. §§ 952 & 963.
 
 
 3
 Ainge's co-defendants included Michael Medjuck and Charles Sotirkys, whose convictions on identical charges involving violations of the MDLEA were reversed by this court in United States v. Medjuck, 48 F.3d 1107 (9th Cir.1995), because of infirmities in the jury instructions. The government concedes that Ainge's convictions on these counts must be reversed for similar reasons.
 
 
 4
 The remaining questions in this appeal therefore relate to the convictions on the remaining three counts. Ainge first contends that our decision in Medjuck requires reversal of his entire conviction because the infirmities in the MDLEA-related jury instructions infected the instructions on his remaining counts. His contention is without merit. We reversed in Medjuck because the district court failed to instruct the jury to establish the statutory and constitutional jurisdictional requirements for conviction under the MDLEA by finding that the Lucky Star was a vessel subject to the jurisdiction of the United States, and that a sufficient nexus existed between the conduct condemned and the United States. The district court instructed the jury separately with respect to the other counts, which had no such peculiar independent jurisdictional requirement. Thus, there is no basis for reversing the remaining convictions on account of the MDLEA instructions.
 
 
 5
 Ainge next argues that the district court erroneously struck four prospective jurors for cause without asking sufficient questions to determine whether they possessed an actual bias. The district court required each venire person to answer a series of fifty-six written questions. The answers of the four prospective jurors in question indicated that each might have had some difficulty in applying some aspect of the law as it related to the case. The district court, therefore, did not abuse its discretion in refusing to conduct additional oral examination. See United States v. Dischner, 974 F.2d 1502, 1522-23 (9th Cir.1992), cert. denied, 507 U.S. 923 (1993); United States v. Baldwin, 607 F.2d 1295, 1297-98 (9th Cir.1979).
 
 
 6
 Ainge next challenges the district court's refusal to subpoena informant Michael Culbertson after Ainge filed a last-minute motion pursuant to Fed.R.Crim.P. 17(b). Ainge wanted to use Culbertson to impeach government witness Jack Hayden's testimony about Ainge's participation in the efforts to transfer and sell the hashish. However, Ainge's involvement in these efforts was amply supported by other government evideence apart from Hayden's testimony. Moreover, even if the district court had granted the subpoena, the record reflects that Culbertson would not have appeared to testify, for his whereabouts were unknown throughout the trial. Any error was therefore harmless.
 
 
 7
 Next, Ainge makes a number of evidentiary challenges to the district court's admission of agent Brian Gallion's expert opinion that the likely destination of the hashish was the United States as well as Canada. Ainge argues that the hypothetical question posed to agent Gallion was not adequately supported by the evidence. See e.g., United States v. Altenburger, 549 F.2d 702, 704 n. 2 (9th Cir.), cert. denied, 431 U.S. 923 (1977). However, the record reveals that the necessary evidentiary foundation had been established. Ainge also contends that admission of Gallion's expert opinion violated Fed.R.Evid. 702. However, it is clear from the record that Gallion's opinion was based on specialized knowledge of the hashish markets in Canada and the United States. Moreover, it helped the jury understand the significance of the evidence. Therefore, admission of this testimony did not violate Rule 702. Ainge also argues that Gallion improperly stated an opinion about Ainge's mental state in violation of Fed.R.Evid. 704. Contrary to Ainge's suggestion, however, the record does not indicate that Gallion improperly testified about Ainge's actual intent. He testified only as to the likely destination of the hashish in light of the established facts. His testimony, thus, did not violate Rule 704. See United States v. Kinsey, 843 F.2d 383, 387-89 (9th Cir.) (admission of expert opinion that defendant's possession of and access to a large amount of cocaine indicated that he was involved in cocaine distribution, not erroneous), cert. denied, 488 U.S. 836 (1988). Ainge's last contention is that admission of Gallion's expert testimony violated Fed.R.Evid. 403 because his extensive involvement as an undercover agent, and his testimony during the preceding two days about the events that transpired, improperly bolstered his expert opinion. However, Ainge failed to raise the Rule 403 objection in district court, and we do not find that the admission was plainly erroneous. See United States v. Olano, 113 S.Ct. 1770, 1777 (1993).
 
 
 8
 Finally, Ainge contends that there was improper vouching on the part of the prosecutor. This contention has merit with respect to the following statement made by the prosecutor about the testimony of witness Hayden:
 
 
 9
 The suggestion that Mr. Hayden would lie; that the United States would sanction that lie, and give him a ten-year prison sentence as a gift--I mean, it raises all kinds of curious questions. What kind of gift is ten years in federal prison? Is that a sweet deal? And we're officers of the court. We're supposed to sit by if we believe that someone is lying? How could we possibly do that? We all--all lawyers that appear in this courtroom are under certain canons of ethics to operate fairly and properly. To suggest that that wasn't done here is repulsive.
 
 
 10
 In spite of the impropriety of this statement, however, there is no reversible error. Defense counsel objected to the statement, and the district court properly sustained the objection and instructed the prosecutor to go on to something else. In addition, after the jury had begun deliberations, defense counsel asked for and received a curative instruction. Counsel also moved for a mistrial, but in view of the status of the proceedings at that time, the brevity of the improper statement, and the curative instruction, the district court properly denied the motion. Thus, the prosecutor's statement is not grounds for reversal.
 
 
 11
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3