GRUBIN, United States Magistrate Judge.

Dated: New York, New York.
October 14, 1997.

**UNITED STATES of America,**

v.

**William GREER, Stephen Hutchins, Thomas Cook, Gregory Stevens, and Glen Koski.**

**No. 2:95–CR–72–05.**

United States District Court,
D. Vermont.

Feb. 9, 1998.

Robert Francis O'Neill, Gravel and Shea, Burlington, VT, Robert Kalina, Rubin & Bailin, New York City, for William Greer.

Mark Alan Kaplan, Jarvis & Kaplan, Burlington, NY, for Stephen Brent Hutchins.

Thomas A. Zonay, Pratt Vreeland Kennelly & Zonay, Rutland, VT, for Michael Maple.

Bradley Specht Stetler, Stetler, Allen & Kampmann, Burlington, VT, for Thomas Cook.

Mark John Keller, Law Office of Mark J. Keller, Burlington, VT, for Gregory Stevens.

Richard C. Bothfeld, Bothfeld & Volk, P.C., Burlington, VT, for Gary Norman Peryea.

David J. Williams, Sleigh & Williams, St. Johnsbury, VT, for Martin Scott.

Martin A. Maley, Kissane Associates, St. Albans, VT, for Glen Koski.

Gary G. Shattuck, Rutland, VT, David V. Kirby, Asst. U.S. Atty., Office of United States Attorney, Burlington, VT, for U.S.

*OPINION AND ORDER*

SESSIONS, District Judge.

Following receipt of guilty verdicts in their jury trial, Defendants William Greer, Stephen Hutchins, Thomas Cook, Gregory Stevens and Glen Koski ("Defendants") have moved, pursuant to Fed. R. Cr. P. 29(c) and

33 for judgment of acquittal and for new trial on Count 4 of the superseding indictment, charging a violation of the Maritime Drug Law Enforcement Act, 46 U.S.C.App. § 1903(a) ("MDLEA"). As grounds for the motion they argue that 1) the issue of nexus should have been determined by the jury; 2) the government lacked authority to indict on Count 4 because consent to enforcement was not obtained from Canada until after indictment; 3) the statute of limitations had expired before jurisdiction over the vessel was obtained; 4) Count 4 was duplicitous; 5) the evidence was insufficient to support an element of Count 4; 6) the statute of limitations expired before the superseding indictment was obtained; 7) one of the charges in Count 4 fails to state an offense. For the reasons given below, Defendants' motion is denied.

## I. *Background*

The Defendants, United States citizens, were found guilty of Count 4 of the superseding indictment, which charged them with conspiracy to violate the MDLEA between 1989 and July 1991. The evidence at trial supported a jury finding that these defendants were involved in a plan to import and export marijuana and hashish over an extended period of time, including the period charged in the indictment. The government produced credible evidence that the Defendants orchestrated and participated in the off-load of many tons of hashish from the vessel Lukas in the St. Lawrence River in Canada in 1989. Defendant Greer and Michael Maple traveled with the ship across the Atlantic, and supervised the off-load into Canada. In 1990 the Defendants planned another off-load of hashish, but the shipment did not arrive. In 1991 the Defendants planned to off-load a 60–ton shipment of hashish from the Pacific Tide 3 and the Giant 4 in the Gulf of the St. Lawrence. The effort went awry, due to bad weather and equipment malfunction, and barrels of hashish were subsequently discovered floating in the St. Lawrence. The Defendants returned to Vermont, where some were later arrested, extradited to Canada and prosecuted there for drug offenses in connection with the aborted off-load.

On July 18, 1996, a District of Vermont grand jury indicted the Defendants for conspiracy to violate the MDLEA. The indictment was sealed at the request of the government. On July 24, 1996, after the arrest of one of the Defendants, the indictment was unsealed.

## II. *Discussion*

### A. *The Standards*

■ Rule 29 provides that a court shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. Fed.R.Crim.P. 29(a). The issue is whether on the evidence presented a reasonable mind might fairly and logically have concluded guilt beyond a reasonable doubt. *United States v. Rivera*, 971 F.2d 876, 890 (2d Cir.1992); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789–90, 61 L.Ed.2d 560 (1979). In determining the issue, a court must view the evidence in the light most favorable to the prosecution, and draw all reasonable inferences in its favor. *Rivera*, 971 F.2d at 890.

■ Under Rule 33 a court on motion of a defendant may grant a new trial if required in the interest of justice. Fed.R.Cr.P. 33. Only in exceptional circumstances should a trial court exercise its broad discretion to set aside a jury verdict, however; the test is whether it would be a manifest injustice to let the guilty verdict stand. *United States v. Sanchez*, 969 F.2d 1409, 1413–14 (2d Cir. 1992).

### B. *Nexus*

The Maritime Drug Law Enforcement Act provides, in pertinent part:

> It is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States ... on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

46 U.S.C.App. § 1903(a).[1] A "vessel subject to the jurisdiction of the United States" is

---

**1.** Section 1903(j) of the statute makes it a crime to conspire to commit the offense defined in Section 1903(a).

defined to include "a vessel located in the territorial waters of another nation, where the nation consents to the enforcement of United States law by the United States." 46 U.S.C.App. § 1903(c)(1)(E).

In a pre-trial motion, Defendants contended that the United States lacks jurisdiction over criminal acts committed outside its territory, absent a showing of nexus between the conduct and the United States. The Court ruled that Congress has the authority to give extraterritorial effect to the MDLEA, and that it intended for the MDLEA to reach Defendants' conduct, but that due process requires the Government to demonstrate nexus between Defendants' conduct and the United States. *United States v. Greer,* 956 F.Supp. 531, 536 (D.Vt.1997). At the close of the evidence, the Court found that the Government had established nexus. Defendants now argue that the Court erred in not submitting the nexus issue to the jury.

The Fifth Amendment's Due Process Clause and the Sixth Amendment right to a jury trial require that a jury find a defendant guilty, beyond a reasonable doubt, of every element of the crime charged in order for the defendant to be properly convicted. *Sullivan v. Louisiana,* 508 U.S. 275, 277–78, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1993). At issue in the present case is whether nexus is an element of the offense set forth in Section 1903(a). If, as Defendants argue, it is an element of the offense, then Defendants' Fifth and Sixth Amendment rights were violated when the Court decided the nexus issue itself.

This Court agrees with the numerous courts which have held the jurisdictional requirement of Section 1903(a) to be an element of the offense which must be submitted to the jury and proven by the government beyond a reasonable doubt. *See, e.g., United States v. Medjuck,* 48 F.3d 1107, 1110 (9th Cir.1995); *Singleton v. United States,* 26 F.3d 233, 236 (1st Cir.), *cert. denied,* 513 U.S. 1003, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994); *United States v. Martinez–Hidalgo,* 993 F.2d 1052, 1057 (3d Cir.1993), *cert. denied,* 510

U.S. 1048, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994); *United States v. Garate–Vergara,* 942 F.2d 1543, 1554–55 (11th Cir.1991), *modified,* 991 F.2d 662, *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1212, 117 L.Ed.2d 451, *cert. denied,* 506 U.S. 1007, 113 S.Ct. 622, 121 L.Ed.2d 555, *and cert. denied,* 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993). In this case, the jury was charged on the "vessel subject to the jurisdiction of the United States" element. Defendants argue, however, that nexus is a component of the jurisdictional element of Section 1903(a), which should also have been charged to the jury.

The Court's consideration of this matter is informed by the Ninth Circuit's decision in *Medjuck,* 48 F.3d at 1110 *("Medjuck ")*, and the district court's opinion on remand, *United States v. Medjuck,* 937 F.Supp. 1368 (N.D.Cal.1996) *("Medjuck remand")*. Those cases involved the prosecution of a Canadian citizen and an American citizen for violating the MDLEA by attempting to transport 28 tons of hashish from Pakistan to Canada aboard a vessel registered in St. Vincent. In a pretrial ruling, the district court held that it would instruct the jury that the jurisdictional requirements of the MDLEA had been satisfied, and that no proof of nexus to the United States was required. The Ninth Circuit reversed and remanded, holding that "the district court erred by not submitting the jurisdictional element of the crime to the jury and by ruling that the government was not required to demonstrate a nexus between defendants and the United States." *Medjuck,* 48 F.3d at 1111.

Defendants read *Medjuck* as requiring the nexus issue to be submitted to the jury. They argue that nexus is a component of Section 1903(a)'s jurisdictional element, and that the *Medjuck* court held it to be "reversible error for the district court not to submit the jurisdiction element to the jury." *Id.* at 1110. Defendants rely further on two subsequent Ninth Circuit cases, *United States v. Ainge,* No. 94–10589, 1996 WL 155137 (9th Cir. Apr.2,1996), *cert. denied,* — U.S. —, 117 S.Ct. 247, 136 L.Ed.2d 175 (1996),[2] and

2. *Ainge* is an unpublished Table Decision. Under Ninth Circuit Rule 36–3, such a disposition is not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.

*United States v. Amparo,* 68 F.3d 1222 (9th Cir.1995), *cert. denied,* 516 U.S. 1164, 116 S.Ct. 1055, 134 L.Ed.2d 200 (1996), which have interpreted *Medjuck* as requiring nexus to be submitted to the jury.

In *Ainge,* a co-defendant of Medjuck argued that the infirmities in the jury instructions identified by the *Medjuck* court infected the instructions on his remaining drug conspiracy and possession counts. The court rejected this argument because the remaining counts did not share the same jurisdictional requirements as the charged MDLEA offenses. *Ainge,* 1996 WL 155137 at *1. In characterizing its earlier decision, the court stated:

> We reversed in Medjuck because the district court failed to instruct the jury to establish the statutory and constitutional jurisdictional requirements for conviction under the MDLEA by finding that the Lucky Star was a vessel subject to the jurisdiction of the United States, and that a sufficient nexus existed between the conduct condemned and the United States.

*Id.*

In *Amparo,* the Ninth Circuit upheld the district court's instruction to the jury that possession of an unregistered sawed-off shotgun was, as a matter of law, a "crime of violence" within the meaning of a statute criminalizing the carrying of a firearm in relation to a crime of violence. In the penultimate paragraph of the opinion, the Court distinguished *Medjuck,* stating:

> In *Medjuck,* we held that whether a vessel is within the jurisdiction of the United States—an element of a maritime drug statute—required a factual determination as to whether there was a nexus between the United States and the defendants. The court erroneously made the determination as a matter of law. It should have instructed that the jury must find nexus in order for the court to have jurisdiction.

*Amparo,* 68 F.3d at 1226.

On remand, the district court in *Medjuck* considered and rejected the argument that *Ainge* and *Amparo* indicate that nexus is an issue for jury determination. *Medjuck* remand, 937 F.Supp. at 1372–74. The district court found the discussions of *Medjuck* in *Ainge* and *Amparo* to be dicta, and inaccurate. This Court agrees. The discussions of *Medjuck* were unnecessary to the resolution of *Ainge* and *Amparo. Amparo* did not even involve the MDLEA. Moreover, it appears that these courts conflated two separate holdings in *Medjuck.*

The *Medjuck* court's discussion of jurisdictional issues under the MDLEA is divided into two sections, the first entitled "Statutory Requirements," the second "Constitutional Requirements." In the first section, the court held that the "vessel subject to the jurisdiction of the United States" requirement of Section 1903(a) is an element of the crime charged, which must be submitted to the jury. *Medjuck,* 48 F.3d at 1110. In the last paragraph of that section, the court wrote: "It was reversible error for the district court not to submit the jurisdiction element to the jury." *Id.* In the second section, the court concluded that due process required that the government demonstrate nexus, and that the trial court therefore erred in holding that proof of nexus was not required. *Id.* at 1111. The court stated, "We agree with defendants that the government has the burden of demonstrating ... nexus and that defendants should have the opportunity for rebuttal on remand." *Id.*

The Court agrees with the *Medjuck* remand court that each section articulates a separate and independent holding: the first, that the "subject to the jurisdiction of the United States" element of Section 1903(a) must be submitted to the jury; and the second, that the government must demonstrate nexus, and defendants must have an opportunity for rebuttal. The *Medjuck* court did not interpret the jurisdictional element of Section 1903(a) as embracing nexus. Thus, the dicta of *Ainge* and *Amparo* notwithstanding, *Medjuck* does not require jury determination of the nexus issue. *See Medjuck* remand, 937 F.Supp. at 1374.

As the *Medjuck* remand court noted, the issue of nexus appears to have been decided by courts rather than juries in several other cases. *See, e.g., United States v. Khan,* 35 F.3d 426, 429 (9th Cir.1994) ("district court's findings of fact not clearly erroneous and support holding that sufficient nexus exists"); *United States v. Davis,* 905 F.2d 245, 249 (9th Cir.1990) ("facts found by district court in denying motion to dismiss for lack of subject matter jurisdiction sufficient to establish nexus between vessel and the United States"); *United States v. Peterson,* 812 F.2d 486 (9th Cir.1987) ("more than sufficient nexus" for exercise of jurisdiction under MDLEA predecessor statute 21 U.S.C. 955a); *United States v. Aikens,* 685 F.Supp. 732, 741 (D.Haw.1988) (trial court finding that sufficient nexus was established). Indeed, it appears that there are no reported cases in which nexus was submitted to the jury.

Properly formulated, the issue of nexus is not appropriately decided by a jury. Although the Sixth Amendment guarantees Defendants the right to have a jury determine their guilt or innocence, it does not grant Defendants the right to a jury determination of facts unrelated to the elements of the charged offense. Courts have generally distinguished between issues of guilt or innocence, for which a jury is required, and issues relating to the right of the government to institute the prosecution, for which jury determination is not required. *See* 1 Charles Alan Wright, Federal Practice and Procedure § 194 at 715 & n.17 (1982); *Dennis v. United States,* 341 U.S. 494, 514–15, 71 S.Ct. 857, 869–70, 95 L.Ed. 1137 (1951); *United States v. Berrigan,* 482 F.2d 171, 175 (3d Cir.1973). Issues of "guilt or innocence" are, fundamentally, those which relate to the substantive conduct which has been criminalized. *See Cabana v. Bullock,* 474 U.S. 376, 385, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986) (ruling which does not concern guilt or innocence of defendant establishes no new elements of crime that must be found by jury).

The case of *United States v. Nunez–Rios,* 622 F.2d 1093 (2d Cir.1980) is instructive on this point. In that case, the defendant asserted a defense of outrageous government conduct. The court noted that this defense only arises when "'the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction ....'" *Id.* at 1098 (quoting *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)). The court held that the defendant's claim was properly decided by the trial court, rather than by the jury, because it was "'based on alleged defects in the institution of the prosecution itself.'" *Id.* (quoting *Hampton v. United States,* 425 U.S. 484, 495, 96 S.Ct. 1646, 1652–53, 48 L.Ed.2d 113 (1976) (internal quotation marks omitted)). *Accord United States v. Collins,* 755 F.Supp. 110 (S.D.N.Y.1991); *see also United States v. Cuervelo,* 949 F.2d 559, 567 (2d Cir.1991) (motion to dismiss which alleges outrageous governmental conduct is a question of law directed to the trial judge).

The Third Circuit reached a similar conclusion in *United States v. Berrigan,* 482 F.2d at 175. There, defendants contended that their prosecution was discriminatory and in violation of the Equal Protection Clause. In holding that the district court had properly decided the discriminatory prosecution claim rather than submitting it to the jury, the court stated, "The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution." *Id.*

By analogy, several courts have held that the resolution of a defendant's double jeopardy claim is one for the court and not the jury. The Second Circuit reached this conclusion in *United States v. Persico,* where it held that even when a double jeopardy claim requires factual determinations, it is properly decided by the court because "[t]he assertion of a valid double jeopardy claim ... 'precludes trial and thus removes from the jury the issue of guilt or innocence.'" 832 F.2d 705, 712 (2d Cir.1987) (quoting *United States v. MacDougall,* 790 F.2d 1135, 1142 (4th Cir. 1986)). *See also Bryant v. Taylor,* 797 F.Supp. 456, 459 (D.Md.), *aff'd,* 981 F.2d 1250 (4th Cir.1992).

The present case is essentially indistinguishable from *Nunez–Rios, Berrigan,* and the double jeopardy cases. The government's obligation to demonstrate nexus is a due process requirement, and operates as a constitutional bar to prosecutions that would otherwise be arbitrary or fundamentally unfair. *See United States v. Greer,* 956 F.Supp. at 535; *United States v. Juda,* 46 F.3d 961, 967 (9th Cir.), *cert. denied,* 514 U.S. 1090, 115 S.Ct. 1811, 131 L.Ed.2d 735, *and cert. denied,* 515 U.S. 1169, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995). Thus, Defendants' nexus argument is in fact a due process challenge, analogous to the equal protection and double jeopardy challenges in *Berrigan* and *Persico,* and even more closely analogous to the outrageous government conduct defense—itself based on due process principles—in *Nunez–Rios.* As in *Nunez–Rios,* Defendants' due process challenge is " 'based on alleged defects in the institution of the prosecution itself,' " *Nunez–Rios,* 622 F.2d at 1098, and does not implicate the "subject to the jurisdiction of the United States" provision of Section 1903(a) or any other element of the MDLEA.

Finally, Defendants have argued that a determination of the nexus issue necessarily involves issues of fact and is, therefore, appropriate for a jury. Defendants are, of course, correct, that there is a factual dimension to the nexus issue, but courts are often required to make factual findings on issues relating to defects in the institution of a prosecution. *See, e.g., Persico,* 832 F.2d at 712. Moreover, the factual inquiry required for a nexus determination is complex, and essentially requires an assessment of the totality of the circumstances. Among the factors that may be considered are: whether drugs were ultimately bound for the United States (*United States v. Caicedo,* 47 F.3d 370, 372 (9th Cir.1995)); whether the attempted transaction is aimed at causing criminal acts within the United States (*Davis,* 905 F.2d at 249); the citizenship of the defendants (*United States v. Rasheed,* 802 F.Supp. 312 (D.Haw.1992)); and the extent to which activity furthering the conspiracy took place on United States soil (*Id.*). Such a multi-factored approach does not lend itself well to jury determination.

In summary, the Court holds that nexus is neither an element of the offense described in Section 1903(a), nor may it be read into the "vessel subject to the jurisdiction of the United States" language of the MDLEA. Rather, it is an independent due process requirement which implicates the government's ability to prosecute Defendants, and not the elements which define what conduct has been criminalized. As such, nexus should not be decided by the jury.

### C. *The Timing of Consent*

Defendants' second argument is that the government lacked authority to prosecute this action because it did not obtain consent to enforce United States law until after the superseding indictment in this case was returned. Because the government lacked authority to prosecute, they argue, the indictment it obtained was incurably defective, and because the government lacked Canadian consent when it initiated enforcement under the MDLEA, it could not establish the "vessel subject to the jurisdiction of the United States" element of Section 1903 at trial.

#### 1. *Government authority to prosecute.*

■ The issue presented to this Court is whether the consent provision of Section 1903(c)(1)(E) requires that the United States obtain consent prior to initiating a prosecution, or if the timing of consent is irrelevant, so long as the government is ultimately able to prove at trial that such consent was obtained.[3] It is undisputed that the government did not have Canadian consent to enforce the MDLEA against these Defendants until after the return of the superseding indictment, at the earliest, and that at trial the government proved Canada's consent.

In interpreting a statute, a court looks first to its terms to determine their meaning. *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739, 109 S.Ct. 2166, 2172,

---

**3.** At the outset the Court notes that Defendants and government alike appear at times to have confused the issues of this Court's subject matter jurisdiction over the offense with the government's authority to initiate a prosecution.

104 L.Ed.2d 811 (1989). Congress, in enacting the MDLEA, both expanded the extraterritorial reach of the government's power to prosecute drug offenses, and set explicit limits on that power. 46 U.S.C.App. § 1903(h); § 1903(c). By the terms of the statute, the government's power to prosecute drug offenses committed extraterritorially is limited in various ways, including a requirement that a vessel on which the offense is committed be "of the United States" or one "subject to the jurisdiction of the United States." The statute defines a vessel subject to the jurisdiction of the United States as, inter alia, "a vessel located in the territorial waters of another nation, where the nation consents to the enforcement of United States law by the United States." 46 U.S.C.App. § 1903(c)(1)(E).

The term "consents" in subsection (c)(1)(E) is in the present tense. By contrast, in subsection (c)(1)(C) Congress stated the term in the past tense: a vessel subject to the jurisdiction of the United States also includes "a vessel registered in a foreign nation where the flag nation *has consented* or waived objection to the enforcement of United States law by the United States." 46 U .S.C.App. § 1903(c)(1)(C) (emphasis supplied). If, arguably, the timing of consent is relevant in prosecutions involving subsection (c)(1)(C), justification may be predicated on the plain language of the statute, which taken literally makes a foreign flag vessel subject to the jurisdiction of the United States only after the flag nation has consented or waived objection.

There is no such temporal provision in subsection (c)(1)(E); read literally, a vessel located in the territorial waters of another nation may be subject to the jurisdiction of the United States whenever the nation consents to United States enforcement of United States law. The verb tense used is a significant factor in construing statutes. *United States v. Wilson*, 503 U.S. 329, 333, 112 S.Ct. 1351, 1353–54, 117 L.Ed.2d 593 (1992). "[A] court should 'give effect, if possible, to every clause and word of a statute.'" *Moskal v. United States*, 498 U.S. 103, 109–10, 111 S.Ct. 461, 465–66, 112 L.Ed.2d 449 (1990) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955)). Congress is presumed to have meant what it said and said what it meant, and to have created a meaningful distinction in its use of the past tense in subsection (c)(1)(C) and its use of the present tense in subsection (c)(1)(E). A reasonable interpretation of that distinction is that the government may acquire jurisdiction over a foreign flag vessel only after the flag nation has consented to enforcement, but that the government obtains jurisdiction over a vessel in foreign waters as long as that foreign nation consents at some time prior to trial.

The cases cited by the Defendants are distinguishable, first because they are concerned with obtaining consent under subsection (c)(1)(C), and second, because they deal with the legality of the seizure of the vessel or the arrest of the defendants. *United States v. Mena*, for example, was a subsection (c)(1)(C) prosecution in which an ex post facto challenge was rejected with the comment, "[t]o be sure, defendants were subject to arrest only after Honduras gave its consent to the enforcement of United States law." 863 F.2d 1522, 1528 (11th Cir.1989). In *United States v. Khan*, 35 F.3d at 430, a subsection (c)(1)(C) prosecution in which consent from the foreign nation was received some ten days after the Coast Guard boarded and seized the ship but prior to its arrest of the crew, the Ninth Circuit held that the United States was not deprived of jurisdiction. In the instant case, however, there is no challenge to the legality of the arrest of the Defendants, who were not taken into custody on board a foreign flag vessel or in foreign territorial waters. None of the cases cited by the Defendants stands for the proposition that the government lacks all authority to proceed with a prosecution under subsection (c)(1)(E) of the MDLEA until after it obtains consent from the foreign nation.

It is by no means true, moreover, that prior consent from the foreign nation is a prerequisite to United States authority to indict, or to arrest, if the offender is otherwise subject to the prosecutorial authority of the United States, for example because of United States citizenship or presence in United States territory. In enacting the

MDLEA, Congress intended to improve United States effectiveness in prosecuting drug smugglers. The consent aspect of the statute is designed to ensure that boarding or seizure of a foreign vessel not take place until consent of the flag nation is obtained, in order that the Coast Guard may not run afoul of international law applicable to law enforcement at sea. *See* S.Rep. No. 99–530, at 15 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5986, 6000. The instant case did not involve boarding or seizure of a foreign vessel by United States authorities. An interpretation of the statute that confines the relevance of the timing of foreign consent to cases involving searches and seizures of foreign vessels, and arrests pursuant thereto, is consistent with the legislative history of the statute. *See also Rasheed,* 802 F.Supp. at 322 (defendant may object only to lack of consent, not to timing of consent or procedures by which consent was obtained).

Accordingly, this Court holds that another nation's consent to enforcement of United States law in a § 1903(c)(1)(E) prosecution need not be obtained prior to indictment, where the legality of seizure or arrest is not at issue, and evidence of consent is conclusively proved at trial.

### 2. *Defective indictment.*

■■■ The Defendants also argue that the indictment was defective because it failed to demonstrate that the Court had jurisdiction over the offense. This is of course an entirely separate issue from that of whether the government lacked authority to prosecute. Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure an indictment must be "a plain, concise and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient under Rule 7(c) when it informs the defendant of the charges he must meet "with sufficient precision" in order to prepare a defense and "with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.1992). It "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the

alleged crime." *Id.* (internal quotations omitted). A court looks at the allegations pleaded to determine whether an offense has been charged. *United States v. Chestnut,* 533 F.2d 40, 45 (2d Cir.1976). An indictment which is valid on its face is sufficient to call for trial of the charge on the merits. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956).

■■■ In Count 4 of the superseding indictment, the grand jury charged that the Defendants

did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree to commit offenses against the United States in violation of Title 46, United States Code Appendix, Section 1903(a). Specifically, the defendants conspired to have a United States citizen on board a vessel distribute and possess, with intent to distribute, hashish, a Schedule I controlled substance. Further, the defendants conspired to distribute and possess with intent to distribute hashish, a Schedule I controlled substance, on board a vessel subject to the jurisdiction of the United States.

Superseding Indictment at 13 (paper 188). The indictment adequately alleged the jurisdictional elements of a prosecution under 46 U.S.C.App. § 1903(a). It charged a violation of the statute, and went on to specify that the violation occurred in either or both of two ways; one, that the conspiracy involved having a United States citizen on board a vessel, and, two, that the conspiracy involved a vessel subject to the jurisdiction of the United States. There was no defect in the indictment; the indictment was valid on its face, and as such justified a trial on the merits. *Costello,* 350 U.S. at 363, 76 S.Ct. at 408–09.

■■■ To be sure, the power of a prosecutor to present or withhold evidence to the grand jury in order to obtain a facially valid indictment is not limitless. *United States v. Ciambrone,* 601 F.2d 616, 623 (2d Cir.1979); *United States v. Patiwana,* 723 F.Supp. 888, 890 (E.D.N.Y.1989). A prosecutor may not mislead the grand jury or engage in fundamentally unfair tactics. *Ciambrone,* 601 F.2d at 623. Thus, a prosecutor may not employ testimony known to be perjurious, or

withhold substantial evidence negating guilt. *Id.* The fact that a prosecutor has misinformed a grand jury is not necessarily grounds for dismissal, however; dismissal is warranted only when the conduct amounts to knowing or reckless misleading of the grand jury as to an essential fact. *Patiwana,* 723 F.Supp. at 890 (quoting *United States v. Bari,* 750 F.2d 1169, 1176 (2d Cir.1984)). *See also United States v. Buchanan,* 787 F.2d 477, 487 (10th Cir.1986) (indictment may be dismissed for prosecutorial misconduct so flagrant that grand jury's ability to exercise independent judgment is infringed).

■ If the government failed to inform the grand jury that it did not at that time have Canada's consent to enforcement and that it needed to have its consent to prove the "vessel subject to the jurisdiction of the United States" component of the indictment, it does not follow that the indictment must be dismissed. As discussed above, the government did not lack authority to undertake a § 1903(c)(1)(E) prosecution. The Defendants have not established that the government knowingly or recklessly misled the grand jury as to the absence of Canada's consent to United States enforcement, or its significance, so as to warrant dismissal of the indictment for prosecutorial misconduct. *Bari,* 750 F.2d at 1176. And the facially valid indictment establishes the Court's subject matter jurisdiction over the offense. *Costello,* 350 U.S. at 363, 76 S.Ct. at 408–09. The Defendants' attack based on lack of consent must therefore be mounted against the evidence of consent at trial.

### 3. *Sufficiency of evidence of consent.*

The Defendants argue that the evidence was insufficient at trial to prove Canada's consent beyond a reasonable doubt, because the government's evidence proved that Canada's consent was obtained in April, 1997, subsequent to indictment, and indeed following the commencement of the trial. Defendants concede that the government proved at trial that Canada consented to United States enforcement. Evidence at the time of trial that the foreign nation consents to enforcement by the United States is sufficient to establish this fact.

### D. *Statute of Limitations*

The Defendants make two statute of limitations arguments: one, that because the superseding indictment was sealed until July 24, 1996 and the five year statute of limitations expired on July 23, 1996, Count 4 is time-barred; and two, that because the government did not obtain proof of Canadian consent until August, 1996 at the earliest, it lacked authority to enforce the law until after the statute of limitations had expired.

Section 3282 of Title 18 of the United States Code states:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found ... within five years next after such offense shall have been committed.

The superseding indictment containing the MDLEA count was filed with the clerk of the court on July 18, 1996, less than five years after the conspiracy concluded after the aborted off-load attempt on July 23, 1991. The government requested that the indictment be sealed until one of the defendants was arrested. The Court granted its request, and the indictment was sealed. Six days later, on July 24, 1996, the superseding indictment was unsealed.

■ An indictment is "found" when it is returned by the grand jury and filed. *United States v. Srulowitz,* 819 F.2d 37, 40 (2d Cir.1987). Rule 6(e)(4) of the Federal Rules of Criminal Procedure provides that an indictment may be kept secret until a defendant is in custody, in which case the clerk of the court seals the indictment. Filing a sealed indictment within the statutory period will toll the statute of limitations until the government's need for delay has been satisfied. *United States v. Watson,* 599 F.2d 1149, 1154 (2d Cir.), *amended by* 690 F.2d 15 (1979), *and modified,* 633 F.2d 1041 (2d Cir. 1980). Where the prosecution can demonstrate that the decision to keep an indictment secret is in the public interest, the date of return, rather than the date of unsealing, will establish the time the indictment is "found." *Srulowitz,* 819 F.2d at 40.

The Government asserted that it was necessary to seal the indictment to avoid alerting Defendant Koski to his impending arrest. The Magistrate Judge found that the Government had shown good cause for sealing the indictment. None of the Defendants has asserted "substantial, irreparable, actual prejudice" from the six day delay, nor can this Court discern any conceivable prejudice whatsoever from such a delay. *Id.* at 41; *United States v. Southland Corp.*, 760 F.2d 1366, 1380 (2d Cir.1985). Accordingly, the Court will not convene a hearing on whether the Magistrate Judge's decision to seal the indictment was an appropriate exercise of his discretion.

■■■ Defendants' second statute of limitations argument, that because consent from Canada was obtained after the limitations period expired, the MDLEA count is time-barred, is also unavailing. For purposes of the statute of limitations, the relevant date is the date of the offense, not the date of consent to United States enforcement.

### E. *Duplicitous Count*

■■■ An indictment is duplicitous if it joins two or more distinct crimes in a single count. *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir.1992). Rule 7(c) of the Federal Rules of Criminal Procedure permits a single count to allege that one offense was committed by one or more specified means, however. In this case, Count 4 charged a single conspiracy to commit drug offenses in violation of 46 U.S.C.App. § 1903(a), and listed two means of accomplishing that conspiracy: conspiring to have a United States citizen on board a vessel, and conspiring to involve a vessel subject to the jurisdiction of the United States.

■■■ The policy considerations that underlie the doctrine of duplicity include

avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime, and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing,

and protecting against double jeopardy in a subsequent prosecution.

*United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir.1981) (citing *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980)). An indictment should be found duplicitous only when it risks unfairness to a defendant. *Margiotta*, 646 F.2d at 733. Count 4 alleged, and a reasonable jury could have found beyond a reasonable doubt, a single conspiracy to ship hashish from Europe and the Middle East to North America on more than one occasion; there was no risk of unfairness to the Defendants by permitting the jury to consider more than one means of accomplishing this aim. *Id.*

### F. *Insufficient Evidence*

The Defendants argue that there was insufficient evidence at trial to prove that they conspired to have a citizen of the United States on board a vessel. The evidence at trial showed that the Defendants were involved in a conspiracy to import hashish by ship via the St. Lawrence River into Canada. On one occasion, the scheme involved having a United States citizen on board the vessel Lukas. The Defendants claim that in order to be convicted of the offense, the evidence must show that their agreement specifically encompassed placing a United States citizen on board the Lukas. They state that the government produced no evidence that the conspirators knew beforehand that a United States citizen would be on board the Lukas.

■■■ In order to prove a conspiracy, the government must show that two or more persons "agreed to participate in a joint venture intended to commit an unlawful act." *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir.1997). Membership in a conspiracy requires proof of knowledge of the venture and purposeful behavior aimed at furthering the goals of the conspiracy. *Id.; United States v. Giraldo*, 80 F.3d 667, 673 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996). To be convicted, the conspirator need not have known all of the details of the conspiracy at the time he agreed to enter the scheme. *United States v. Nusraty*, 867 F.2d 759, 763 (2d Cir.1989) (citing *United States v. Feola*, 420 U.S. 671,

692, 95 S.Ct. 1255, 1267–68, 43 L.Ed.2d 541 (1975)); *see also United States v. Casamento,* 887 F.2d 1141, 1156 (2d Cir.1989) (defendant who, with knowledge that common endeavor existed, agreed to join endeavor, could be convicted even if unaware of contours of broader conspiracy).

■ The unlawful act in the instant case is the possession of a controlled substance on board a vessel with intent to distribute. As discussed above, subject matter jurisdiction may be established by showing, inter alia, that the vessel is subject to the jurisdiction of the United States, or that a citizen of the United States is on board the vessel. Although proof of jurisdiction is an essential element of the offense which must be proven at trial beyond a reasonable doubt, *Medjuck,* 48 F.3d at 1110, the conspirator need not have specific knowledge of the particular way in which the court's subject matter jurisdiction may be established in order to agree to participate in the illegal venture. *Casamento,* 887 F.2d at 1156; *Nusraty,* 867 F.2d at 763.

■ Because the evidence was sufficient to establish that the Defendants agreed to a common endeavor to possess a controlled substance on board a vessel with intent to distribute, and it was not necessary for the government to prove that the Defendants specifically knew in advance of the shipment that a United States citizen would be on board the vessel, judgment of acquittal on this component of Count 4 is not warranted.

### G. *Failure to State an Offense*

Lastly, the Defendants argue that the "vessel subject" component of Count 4 fails to state an offense. The relevant language from Count 4 states: "the defendants conspired to distribute and possess with intent to distribute hashish, a Schedule I controlled substance, on board a vessel subject to the jurisdiction of the United States." Defendants contend specifically that the indictment omits to allege an agreement to have *a person* possess with intent to distribute a controlled substance on board a vessel subject to the jurisdiction of the United States.

■ Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment be merely a "plain, concise and definite written statement of the essential facts constituting the offense charged." The purpose of the Rule is to give a defendant adequate notice of the charges to enable the preparation of a defense and to permit the pleading of former jeopardy. *Stavroulakis,* 952 F.2d at 693. Count 4 sufficiently charged a conspiracy to violate the Maritime Drug Law Enforcement Act, as discussed above. That the indictment omitted the word *person* from one of the means by which Defendants were alleged to have committed the offense did not deprive them of adequate notice of the nature of the crime. See *United States v. Hernandez,* 980 F.2d 868, 871–72 (2d Cir. 1992), where omission of the phrase "with intent to distribute" from narcotics conspiracy charge did not render the indictment defective. The instructions to the jury did not add an element, as the Defendants argue, but merely clarified what was implicit in the allegation. *Id.* at 872.

### III. *Conclusion*

For the reasons stated above, Defendants' Motion for Judgment of Acquittal and for a New Trial (paper 450) is denied.

Sentencing, and evidentiary hearing, if necessary, is set for Tuesday, May 19, 1998, at 9:30 a.m. for all defendants.