**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael MEDJUCK, Defendant–**
**Appellant.**

No. 96–10347.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1997.

Decided Sept. 3, 1998.

---

John J.E. Markham, II, Markham & Read, San Francisco, California, for defendant-appellant.

Lewis A. Davis and Mary E. Pougiales, Assistant United States Attorneys, San Francisco, California, for plaintiff-appellee.

Before: HUG, Chief Judge, GOODWIN and HAWKINS, Circuit Judges.

HUG, Chief Judge:

Appellant Michael Medjuck appeals from his jury conviction for conspiracy to possess, and possession with intent to distribute, drugs on board a vessel subject to the jurisdiction of the United States, 46 U.S.C.App. § 1903(j) & (a), and for aiding and abetting, 18 U.S.C. § 2. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

*Background*

The facts of the case are set forth in the district court's memorandum opinion. *See United States v. Medjuck*, 937 F.Supp. 1368 (N.D.Cal.1996) (*"Medjuck I "*). We will only briefly summarize here. Medjuck was charged with participation in a far-flung conspiracy to ship and distribute some 70 tons of hashish from Pakistan to Canada and the United States on board a ship named the "Lucky Star," in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C.App. § 1903. Before trial, the district court ruled that the Government need not demonstrate the existence of a nexus between the alleged drug conspiracy and the United States to proceed with the prosecution and that the Government had proven that the Lucky Star was "a vessel subject to the jurisdiction of the United States" such that the conspiracy fell within the purview of the MDLEA. Medjuck entered a conditional plea of guilty, but reserved for appellate review the issue whether the Government need demonstrate nexus in order to maintain the prosecution.

On review this court reversed Medjuck's conviction after concluding that the district court had erred by (1) failing to submit to the jury the question whether the Lucky Star was a vessel subject to United States jurisdiction, and (2) failing to require that the Government demonstrate nexus between the alleged conduct and the United States. *United States v. Medjuck*, 48 F.3d 1107 (9th

Cir.1995) ("*Medjuck II* "). We remanded to the district court for further proceedings.

On remand, Medjuck argued that the question of nexus is one for the jury to determine, rather than the court. At Medjuck's request, the district court deferred ruling on the issue until Medjuck's Rule 29 motion. Medjuck also objected to the introduction of videotaped testimony of two Canadian witnesses, on the grounds that the admission of such testimony denied him his Sixth Amendment right to confront witnesses against him.

A jury convicted Medjuck on three counts of violation of the MDLEA. The district court denied the Rule 29 motion, concluding that nexus was a question for the court and not the jury, and that the Government had met its burden of demonstrating nexus by a preponderance of the evidence. *See Medjuck I*, 937 F.Supp. at 1370. This appeal followed.

## Discussion

Medjuck presents several arguments for reversal of his convictions. He first contends that the district court erred by deciding the nexus question, rather than submitting it to the jury. He also contends that the district court improperly defined nexus, and erred in determining that the Government had demonstrated a sufficient nexus. Finally, he contends that the district court erred when it allowed the introduction of the videotaped testimony. We address each argument in turn.

## I. The Nexus Requirement

The MDLEA prohibits possession, manufacture, or distribution of illicit drugs on board a "vessel subject to the jurisdiction of the United States." 46 U.S.C.App. § 1903. A "vessel subject to the jurisdiction of the United States" is defined as either (1) a vessel without nationality; (2) a vessel assimilated to a vessel without nationality; (3) a vessel registered in a foreign nation where the nation of registration consents to the United States' enforcement of its laws on board that ship; (4) a vessel located in the customs waters of the United States; or (5) a vessel located in the territorial waters of another nation where that nation consents to

enforcement of United States laws by United States authorities. *Id.* at § 1903(c).

■■■ In addition to the statutory jurisdictional element, we require that, in order for extraterritorial application of United States penal statutes, such as the MDLEA, to satisfy the strictures of due process, the Government demonstrate that there exists "a sufficient nexus between the conduct condemned and the United States" such that the application of the statute would not be arbitrary or fundamentally unfair to the defendant. *Medjuck II*, 48 F.3d at 1111; *see also United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir.1990). The district court determined that the nexus question was one for the court and not the jury, and concluded that the Government had met its burden in this regard by demonstrating nexus by a preponderance of the evidence. *See Medjuck I*, 937 F.Supp. at 1370.

■■■ Medjuck now contends that the jury and not the court must decide whether nexus has been established. He further contends that the district court improperly defined nexus, and he attacks as erroneous the district court's conclusion that a sufficient nexus was demonstrated in this case.

We recently concluded that nexus is not an element of the offense and that the nexus issue is properly decided by the judge. *See United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1257 (9th Cir.1998). Thus, the district court did not err by deciding the nexus issue instead of submitting it to the jury.

In deciding the nexus issue, the district court defined "nexus" according to *United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir. 1995), as "a connection between the criminal conduct and the United States sufficient to justify the United States' pursuit of its interests." *Medjuck I*, 937 F.Supp. at 1381 (internal quotations omitted). Medjuck argues that the proper definition of nexus comes instead from *United States v. Khan*, 35 F.3d 426, 429 (9th Cir.1994), which states that "[t]o meet the nexus requirement, the government must show that the plan for ship-

ping the drugs was likely to have effects in the United States."

While the language of *Caicedo* and *Khan* are not in conflict, the definition provided by *Khan* is more precise and was recently followed by this court in *Klimavicius–Viloria*, 144 F.3d at 1257. In *Klimavicius–Viloria*, we stated that there is sufficient nexus "where an attempted transaction is aimed at causing criminal acts within the United States. More specifically, there is sufficient nexus where the plan for shipping the drugs was likely to have effects in the United States." *Id.* (internal quotations and citations omitted). This definition clearly encompasses conspiracies that plan the shipment of drugs that are destined for the United States. *See Khan*, 35 F.3d at 429 (conspiracy included backup landing site in the United States and primary plan to transport drugs to New York); *United States v. Aikins*, 946 F.2d 608, 614 (9th Cir.1990) (operation was designed to bring off-loaded marijuana into the United States); *Davis*, 905 F.2d at 249 (defendant intended to smuggle contraband into United States territory); *United States v. Peterson*, 812 F.2d 486, 493 (9th Cir.1987) ("substantial evidence that the drugs were bound ultimately for the United States").

In this case, the district court found that the conspirators did not intend to deliver the drugs directly into the United States. It did conclude, however, "that both economics and geography dictate that at least some portion of the hashish would at some point be found in the United States." *Medjuck I*, 937 F.Supp. at 1394. The testimony of Sergeant Jean Martin of the Royal Canadian Mounted Police supports the district court's finding that some portion of the drugs would enter the United States, therefore, the district court's finding of fact on this point is not clearly erroneous.

Furthermore, the district court concluded that Medjuck had direct and indirect contacts with United States in furtherance of the conspiracy. *See Medjuck I*, 937 F.Supp. at

1388–94. Medjuck knowingly directed his agent to use the United States to plan and conduct the conspiracy, and he himself conducted some of the business of the conspiracy from the United States. *See id.* at 1388. For example, Medjuck sent his agent to the United States to locate and deliver money to a boat captain in order to hire a boat and crew to meet the Lucky Star on the high seas and offload 70 tons of hashish. *See id.* Medjuck also made arrangements himself using telephone calls and personal meetings in the United States. *See id.* at 1390. Because entry of the drugs into the United States and the coordination and control of the conspiracy in the United States "was likely to have effects in the United States" and to "caus[e] criminal acts within the United States" there is a sufficient basis to find that the government established nexus. *Klimavicius–Viloria*, 144 F.3d at 1257.

## II. Admission of Videotaped Testimony

Medjuck contends that the district court erred when it admitted videotaped testimony from three Canadian witnesses. He argues that the admission of the testimony denied him his rights under the Sixth Amendment and Fed.R.Crim.P. 15 to confront those witnesses face-to-face.

█ Fed.R.Crim.P. 15(a) allows the Government, in "exceptional circumstances," to depose its own witnesses in order to preserve that testimony for trial. Rule 15(b) provides that "the officer having custody of a defendant" shall "produce the defendant at the examination and keep the defendant in the presence of the witness during the examination" unless the defendant waives this right in writing. The Sixth Amendment Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).[1] Neither right is absolute; courts have permitted depositions to be taken and introduced at trial without the presence of the defendant at the depositions.

---

1. The Confrontation Clause serves several purposes: "(1) ensuring that witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the demeanor of witnesses." *United States v. Sines*, 761 F.2d 1434, 1441 (9th Cir. 1985).

## 1. Rule 15

 When the government is unable to secure a witness's presence at trial, Rule 15 is not violated by the admission of videotaped testimony so long as the government makes diligent efforts to secure the defendant's physical presence at the deposition and, failing this, employs procedures that are adequate to allow the defendant to take an active role in the deposition proceedings. *See United States v. Gifford*, 892 F.2d 263, 265 (3d Cir.1989); *United States v. Salim*, 855 F.2d 944, 950 (2d Cir.1988). Here, the Canadian witnesses were unavailable for trial because they were beyond the subpoena power of the United States and refused voluntarily to attend. The Government was unable to secure Medjuck's presence at the Canadian depositions because there was no mechanism in place to allow United States officials to transfer Medjuck over to Canadian authorities at the Canadian border, and secure his return to the United States in a timely fashion after the depositions.[2]

Finally, the Government set up an elaborate system to allow Medjuck to witness the depositions live by video feed and to participate with his attorneys by private telephone connection during the depositions taken in Canada. The proceedings were videotaped. Medjuck's level of involvement was sufficient under *Salim* and *Gifford*.

We conclude that the district court did not err in finding that the Government satisfied the requirements for the exception to Rule 15's presence requirement.

## 2. Confrontation Clause

 The Supreme Court has recognized an exception to a defendant's confrontation rights "where denial of such confrontation is necessary to further an important public policy and ... the reliability of the testimony is otherwise assured." *Maryland v. Craig*, 497 U.S. 836, 850, 110 S.Ct. 3157, 111 L.Ed.2d

666 (1990). More specifically, an exception has been recognized for admission of deposition testimony where a witness is unavailable to testify at trial; the Third Circuit has set forth a test for determining whether deposition testimony falls within that exception. *See United States v. Kelly*, 892 F.2d 255, 261 (3d Cir.1989).

First, the deposition testimony must fall within "an established exception to the hearsay rule." *Id.* Second, the deposition must be taken "in compliance with law." *Id.* at 262.[3] Finally, the defendant must have had an opportunity to cross-examine the deposed witnesses. *Id.*

This court has held that before the "Confrontation Clause's 'preference for face-to-face confrontation'" may be avoided by resort to telephonic participation, the Government "must *first* attempt to secure the defendant's actual, physical presence" at the deposition. *Christian v. Rhode*, 41 F.3d 461, 467 & n. 8 (9th Cir.1994) (emphasis in original). In *Christian*, the Arizona State government had "made no effort whatsoever" to secure the defendant's presence at the depositions. *Id.* at 466. Without establishing a specific test for what the government must do to qualify for an exception to the Confrontation Clause, the court held "that the state must do *something* in its attempt to secure the defendant's presence." *Id.* at 467 (emphasis in original).

We conclude that the Government satisfied *Christian*'s requirement that it attempt to secure the defendant's actual presence, by virtue of its demonstration of the impossibility of obtaining Medjuck's physical presence on terms acceptable to the Government. There is no requirement that the Government go through a futile exercise before it may proceed to arrange for a defendant's remote participation.

---

**2.** The district court found that United States officials were unable to maintain custody over Medjuck while in Canada. The district court further found that because Medjuck was wanted in Canada on drug smuggling charges stemming from the same conspiracy that formed the basis of the instant prosecution, he would have been arrested and tried in Canada once he arrived there, and

possibly not returned to the United States until after trial and, possibly, after serving a sentence in Canada. We find no error in these findings.

**3.** This element of the test incorporates the analysis of the propriety of deposition testimony under Rule 15.

With regard to the requirements set forth in *Kelly, supra,* we conclude that (1) the videotaped testimony qualified under F.R.E. 804(b)(1) (unavailability exception); (2) Medjuck's level of participation was adequate to afford him ample opportunity to cross-examine the witnesses; and (3) the depositions were taken in accordance with Rule 15, as discussed above.

We conclude that the district court did not err in admitting the videotaped testimony of the Canadian witnesses.

AFFIRMED.