**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

ANATOLI ZAKHAROV,
            *Defendant-Appellant.*

No. 03-50214

D.C. No.
CR-01-01652-6-JM

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued November 3, 2004
Submitted November 7, 2006
Pasadena, California

Filed November 15, 2006

Before: A. Wallace Tashima, Raymond C. Fisher, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Michael L. Crowley, San Diego, California, for the defendant-appellant.

David Jonathan Weiner, United States Department of Justice, Washington, D.C., William V. Gallo, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

## OPINION

TALLMAN, Circuit Judge:

We confront the constitutional limits of our extraterritorial jurisdiction in yet another major drug-smuggling operation on the waters of the eastern Pacific Ocean. Anatoli Zakharov appeals his jury conviction for (1) conspiracy to possess over 9200 kilograms of cocaine with intent to distribute on board a vessel, and (2) possession of the cocaine with intent to distribute on board the vessel. He challenges the amended Maritime Drug Law Enforcement Act ("MDLEA"), codified at 46 U.S.C. app. §§ 1901-1904, as unconstitutional on the grounds that Congress removed jurisdiction from the enumerated elements of the maritime drug-smuggling offense that must be decided by a jury beyond a reasonable doubt. He also challenges the district court's failure to suppress evidence of his confession and the sufficiency of evidence supporting his convictions.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Zakharov's convictions. First, the MDLEA is constitutional as applied to Zakharov. Facts underlying statutory jurisdiction were not contested, and determination of constitutional nexus jurisdiction is properly within the province of the court, not the jury. Second, we find the evidence sufficient to establish the required nexus between the United

States and the defendant's drug-smuggling activities. Third, the district court properly determined that Zakharov's confession should not be suppressed because the Fourth Amendment does not apply to non-resident aliens outside of the United States. Fourth, the eleven-day delay in bringing Zakharov before a magistrate judge was not unreasonable under Federal Rule of Criminal Procedure 5(a) in light of the time necessary to transport him by sea to the United States. Finally, evidence of Zakharov's confession was properly admitted, and sufficient evidence existed to allow any rational trier of fact to find him guilty beyond a reasonable doubt. We uphold the convictions.

But, because we cannot reliably determine from the record "whether the sentence imposed would have been materially different had the district court known that the [federal] sentencing guidelines were advisory," *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005) (en banc), we grant a limited remand as to the sentence imposed.

I

Zakharov was a crew member aboard the *Svesda Maru*, a fishing vessel registered in the country of Belize. On April 28, 2001, the vessel was 500 miles off the coast of southern Mexico in international waters when it was spotted by the crew of the USS *Rodney M. Davis*, a United States Navy frigate performing drug interdiction and maritime patrol duties in cooperation with the United States Coast Guard. A seven-member Coast Guard Law Enforcement Detachment ("boarding team") deployed from the *Davis* in a small boat and attempted to make contact with the *Svesda Maru*. The boarding team observed that the *Svesda Maru* was flying the Belizean flag. When the *Svesda Maru* did not respond after she was hailed by the Navy frigate, the Coast Guard team boarded the *Svesda Maru* and conducted a four-day search of the vessel including a "space accountability search." The *Davis*'s boarding team was relieved by a second Coast Guard crew on the fifth day

of the search. The second crew discovered more than 9200 kilograms of cocaine cleverly secreted in an area behind a fuel tank of the vessel.[1]

Following discovery of the cocaine, the Coast Guard seized the *Svesda Maru* pursuant to our bilateral treaty with Belize and with the express permission of the Belizean government. The *Svesda Maru*'s crew, all Russians and Ukrainians, were taken into custody aboard the Coast Guard Cutter *Active*. They were kept together on the deck of the cutter for the ten days it took to reach San Diego, California. None of the *Svesda Maru* crewmen was interrogated while on board the Coast Guard ship.

The cutter arrived in San Diego on May 13, 2001. Prior to Zakharov's initial appearance before a magistrate judge, an agent of the United States Drug Enforcement Administration ("DEA") interviewed him through a Russian interpreter. The agent advised Zakharov of his constitutional rights, and Zakharov signed a Russian-language *Miranda* waiver. The interview lasted approximately one and one-half to two hours. The agent testified that Zakharov initially denied knowledge of the cocaine but was eventually persuaded to talk. Zakharov then admitted that he was to be paid $20,000 for the trip and that he and the crew knew that the vessel contained cocaine, but he claimed that only the captain knew all of the details of the voyage. He also claimed that this was his first experience smuggling cocaine.

Later that day, a federal magistrate judge found probable cause to support the complaint against Zakharov. Zakharov's

---

[1]This turned out to be one of the largest cocaine seizures in United States maritime history. *See* Press Release, Office of National Drug Control Policy, White House Drug Policy Office and Coast Guard Announce All-Time Record Annual Maritime Cocaine Seizures (Oct. 5, 2001), *available at* http://www.whitehousedrugpolicy.gov/NEWS/press01/100501.html.

initial appearance in court was on the following day. The magistrate ordered his detention without bail. Zakharov was indicted on May 24, 2001, and he pled not guilty to one count of conspiracy to possess cocaine with intent to distribute aboard a vessel and one count of possession of cocaine with intent to distribute aboard a vessel, in violation of the MDLEA, 46 U.S.C. app. § 1903(a), (c)(1)(C), (f) & (j), and 18 U.S.C. § 2. In November 2002, a jury in the Southern District of California convicted Zakharov on both counts. He was sentenced to 240 months in custody to be followed by five years of supervised release.

## II

Zakharov first argues that the district court lacked jurisdiction to adjudicate his claims under the MDLEA. He claims that (1) the district court erred in failing to submit facts necessary to establish jurisdiction to the jury, and (2) the government failed to present sufficient evidence to establish a nexus between the United States and the seized cocaine.

[1] The MDLEA prohibits drug smuggling activity by "any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States or a resident alien of the United States on board any vessel." 46 U.S.C. app. § 1903(a). The statute provides:

> Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.

*Id.* § 1903(f). In *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998), we distinguished between "statutory jurisdiction" and the nexus requirement of "constitutional jurisdiction." A court determines statutory jurisdic-

tion by asking whether the vessel at issue is "a vessel subject to the jurisdiction of the United States," which MDLEA defines according to the ship's nationality (if any), its location, and any relevant agreements between the United States and foreign nations regarding the enforcement of United States criminal laws on vessels or in territorial waters subject to the nation's jurisdiction. *See* 46 app. U.S.C. § 1903(c). In contrast, a court determines constitutional jurisdiction based on the nexus between the United States and the attempted criminal transaction. *See Klimavicius-Viloria*, 144 F.3d at 1257. Both jurisdictional inquiries must be satisfied "where the MDLEA is being applied extraterritorially." *United States v. Perlaza*, 439 F.3d 1149, 1160 (9th Cir. 2006).

Zakharov argues that § 1903(f) violates the Fifth and Sixth Amendments of the United States Constitution and the requirement of *Apprendi v. New Jersey*, 530 U.S. 466, 483-84, 499-500 (2000), that all facts necessary to constitute a statutory offense must be proven to a jury beyond a reasonable doubt. He asserts that Congress cannot "define away facts necessary to constitute a criminal offense" by labeling certain facts as non-elements of the crime. He argues that, by adopting § 1903(f), Congress impermissibly removed factual questions of statutory and constitutional nexus jurisdiction from the hands of the jury. We review de novo questions regarding the constitutionality of a statute. *See United States v. Bynum*, 327 F.3d 986, 990 (9th Cir. 2003).

**[2]** In *Perlaza* we made clear that, notwithstanding § 1903(f), contested facts underlying the existence of statutory jurisdiction must be resolved by a jury.[2] *Perlaza*, 439

[2]*Perlaza*'s holding that a jury must resolve contested jurisdictional issues was limited to the context of statutory jurisdiction. We indicated that constitutional nexus jurisdiction is still an issue for the court's determination. *Perlaza*, 439 F.3d at 1167 ("[S]hould a jury conclude on remand that the [vessel was foreign], the *district court* will . . . have to determine whether the Government established a sufficient nexus between the [vessel] and the United States." (emphasis added)).

F.3d at 1165-67. We ruled in light of the Fifth and Sixth Amendments that such facts though "not formally identified as elements of the offense charged must be submitted to the jury and proved beyond a reasonable doubt." *Id.* at 1166 (citation and quotation omitted). Accordingly, insofar as Zakharov claims that statutory jurisdiction is an element of the crime that must be proven to the jury, that argument is now moot. Moreover, there is no factual question pertaining to statutory jurisdiction for the jury to decide. There is no dispute for purposes of § 1903 that the district court possessed statutory jurisdiction in the instant action: the *Svesda Maru* was a Belizean-flagged vessel registered in Belize, and the Coast Guard received consent to enforce United States law aboard her both expressly from the Belizean government and pursuant to our bilateral treaty with Belize.[3] *See id.* at 1168; 46 U.S.C. app. § 1903(c)(1)(C) (extending statutory jurisdiction to "a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States").

[3] Unlike statutory jurisdiction, the constitutional nexus requirement is not an express element of the crime but is "a judicial gloss applied to ensure that a defendant is not improperly haled before a court for trial." *Klimavicius-Viloria*, 144 F.3d at 1257. To accord with due process, we require a sufficient nexus between the United States and the defendant's activities before exerting jurisdiction over foreign vessels.[4] *See Perlaza*, 439 F.3d at 1168; *see also Moreno-Morillo*, 334 F.3d at 827-28; *Klimavicius-Viloria*, 144 F.3d at 1256-59; *United States v. Medjuck*, 48 F.3d 1107, 1111 (9th Cir. 1995);

---

[3]The district court "preliminarily" found statutory jurisdiction to be proper. Because it believed statutory jurisdiction to be an element of an offense under *United States v. Smith*, 282 F.3d 758 (9th Cir. 2002), the court then submitted the question of consent to the jury. The district court need not have taken this second step since consent was uncontested.

[4]We do not require nexus for stateless vessels. *See Perlaza*, 439 F.3d at 1161; *United States v. Moreno-Morillo*, 334 F.3d 819, 829 (9th Cir. 2003).

*United States v. Khan*, 35 F.3d 426, 429-30 (9th Cir. 1994); *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990). Nexus is a constitutional requirement analogous to "minimum contacts" in personal jurisdiction analysis. *Klimavicius-Viloria*, 144 F.3d at 1257. Nexus has been treated as a non-element of an offense both before and after *Apprendi*, 530 U.S. 466. *See Bynum*, 327 F.3d at 992-93 (considering *Apprendi* and stating that "if a statute does not expressly require proof of a nexus between the criminal conduct and the United States, proof of such a connection is not an element of the offense" (citation omitted)); *Klimavicius-Viloria*, 144 F.3d at 1257 ("Nexus is part of the jurisdictional inquiry, but it is an inquiry for the court, not the jury.").

**[4]** In this context, MDLEA § 1903(f) merely codified this court's longstanding rule that the constitutional nexus inquiry is a matter for the court's determination. *See id.*; *Moreno-Morillo*, 334 F.3d at 827-28 (citing *Klimavicius-Viloria* and holding that, in the context of the MDLEA, nexus is an inquiry for the court, not the jury). Accordingly, we reject Zakharov's contention that the constitutional nexus inquiry must be submitted to a jury.

**[5]** The next question is whether the district court properly determined that the evidence sufficed to establish a nexus between the United States and Zakharov's activities. *See Klimavicius-Viloria*, 144 F.3d at 1257-59. Due process requires a district court to find sufficient nexus even when the flag nation has consented to the application of United States law.[5] *See Perlaza*, 439 F.3d at 1168. Nexus may be estab-

---

[5]The First and Fifth Circuits have rejected the position that nexus is required for foreign vessels when the flag nation has consented to the application of United States law to the defendants. *See United States v. Bustos-Useche*, 273 F.3d 622, 627-28 (5th Cir. 2001) (holding that jurisdictional requirements were met because the flag nation consented to the enforcement of the MDLEA over the foreign vessel); *United States v. Cardales*, 168 F.3d 548, 552-53 (1st Cir. 1999) (stating that due process is not

lished by a showing that "an attempted transaction is aimed at causing criminal acts within the United States" or that "the plan for shipping the drugs was likely to have effects in the United States." *United States v. Medjuck*, 156 F.3d 916, 919 (9th Cir. 1998) (citing *Klimavicius-Viloria*, 144 F.3d at 1257). In *Klimavicius-Viloria*, we considered that (1) the markings on the seized cocaine matched markings in a database of other cocaine seized in the United States; (2) the United States was the most likely destination for a large load of cocaine; and (3) the location of the vessel and the maps on board were consistent with a course bound for the United States. 144 F.3d at 1258-59.

Here, extensive evidentiary hearings were held to determine whether sufficient nexus with the United States existed to establish jurisdiction. The district court determined by a preponderance of the evidence that the shipment of cocaine was likely to have effects in the United States. The court found that (1) four of the twelve markings on the cocaine bundles were found previously in the United States; (2) based on the type of vessel, its location, and the kinds of navigational charts on the vessel, the cocaine was destined for the United States; and (3) it was unlikely that Russia or Europe was the intended destination for the cocaine. The district court based

---

violated because it is not arbitrary or fundamentally unfair to exert authority with the flag nation's consent).

The Third Circuit has rejected the proposition that nexus is required without expressly distinguishing between stateless and foreign vessels. *See United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993) (holding that no nexus was required in a determination involving a stateless vessel); *see also United States v. Perez Oviedo*, 281 F.3d 400, 403 (3d Cir. 2002) (noting that *Martinez-Hidalgo* had expressly rejected our approach and holding that it was not arbitrary or fundamentally unfair to exert jurisdiction when the flag nation consents to application of the MDLEA).

Unless and until the Supreme Court addresses this issue, we are bound by Ninth Circuit precedent.

the last two findings on its determination that the testimony of Zakharov's expert witness, a former DEA agent, was not as credible or persuasive as that of the government's expert, a DEA strategic intelligence analyst with over eighteen years of experience. *See Spain v. Rushen*, 883 F.2d 712, 717 (9th Cir. 1989) (" '[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.' " (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1984))).

Zakharov makes very specific evidentiary challenges to the district court's findings and questions its credibility determination. Zakharov suggests that, because the government's expert testified that Russia also has a drug trafficking market and that Europe was a possible market, it was erroneous for the district court to believe that the United States was the likely destination for the drugs. But many of the statements on which Zakharov relies could support either witness's conclusion.[6] In essence, Zakharov's claim constitutes no more than an argument that it would have been reasonable for the district court to believe his expert witness instead of the expert witness for the United States. Zakharov's argument does not create "a definite and firm conviction that a mistake has been committed" by the district court in its credibility and factual findings. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002)

---

[6]For example, Zakharov points out that the government's expert testified that, "between 1998-2000, the number of seizures of cocaine had increased over 100% in the Eastern Pacific (where the *Svesda Maru* was seized) and that cocaine seizures in the Caribbean had decreased while seizures at the United States/Mexico border had decreased." This fact could show that more shipments were going to places other than the United States. However, it could just as reasonably suggest that smugglers were attempting more sea-based imports into the United States and fewer land-based attempts along the border.

(quotation and citation omitted). Thus, the district court did not err.

Next, we must determine whether these facts support a finding that the drug shipment would likely have had effects in the United States. The only significant distinction between the facts establishing nexus in *Klimavicius-Viloria* and those in the instant case is that here there are fewer cocaine bundle markings that match bundles found previously in the United States. We considered matching markings to be "[t]he most persuasive evidence" in *Klimavicius-Viloria.* 144 F.3d at 1258. There, five of the markings had been found only in the United States, while five others had been found predominately in the United States and in countries involved in the shipment of cocaine. *Id*. Further, "three sets of the markings have been found together in seizures in the United States." *Id*.

The connection is not as substantial here. Only four of the twelve markings had been found previously in the United States. Three of the matches may have been particularly significant, however, because they were found on cocaine packages in the United States roughly contemporaneously with the seizure of the *Svesda Maru*.

**[6]** In any event, the location of the vessel, the large amount of cocaine, the types of navigational charts on board, and the existence of some matching logos are sufficient indicators of nexus for the exercise of United States jurisdiction to "not be arbitrary or fundamentally unfair." *See id*. at 1256 (citing *Davis*, 905 F.2d at 248-49). We hold that the district court properly found sufficient nexus between the United States and the seized cocaine to support its jurisdiction.

### III

Zakharov contends that evidence of his statements made upon arrival in San Diego should be suppressed because there was undue delay in determining probable cause in violation of

the Fourth Amendment and in bringing Zakharov before a magistrate judge in violation of Federal Rule of Criminal Procedure 5(a). We review de novo a district court's denial of a motion to suppress evidence, but the factual findings underlying the ruling are reviewed for clear error. *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003). We review for clear error the district court's determination that pre-arraignment delay is reasonable under Rule 5(a). *See United States v. Padilla-Mendoza*, 157 F.3d 730, 732 (9th Cir. 1998).

**[7]** Zakharov claims that the United States' failure to utilize helicopters, radios, fax machines, and other technology to obtain a probable cause determination before he was physically present in the United States constituted undue delay under the Fourth Amendment. The district court summarily held that Zakharov could not "prevail on the Fourth Amendment claim because the Fourth Amendment does not apply to aliens outside United States territory." In support the court cited *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), in which the Supreme Court held that the Fourth Amendment does not apply to searches and seizures by the United States against a non-resident alien in a foreign country. *See id.* at 274-75; *see also id.* at 271 ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." (citation omitted)). The *Verdugo-Urquidez* court noted that a warrant requirement for overseas searches "could significantly disrupt the ability of the political branches to respond to foreign situations involving our national interest." *Id.* at 273-74.

**[8]** This holding forecloses Zakharov's claim. Here, the alleged unconstitutional delay took place outside of the United States in international waters, and there is no suggestion that Zakharov had any substantial connection to this country. *See United States v. Barona*, 56 F.3d 1087, 1093-94 (9th Cir. 1995) (holding that Fourth Amendment protection

does not apply to an alien until he "has assumed the complete range of obligations that we impose on the citizenry" (quotation and citation omitted)). Because Zakharov cannot show that he is one of the "People of the United States," *id.* at 1093 (quotation and citation omitted), he is not entitled to protection under the Fourth Amendment.

**[9]** We also hold that Zakharov's claim pursuant to Federal Rule of Criminal Procedure 5(a) is without merit. At the time of Zakharov's arrest, Rule 5(a) provided that "any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge." Fed. R. Crim. P. 5(a) (2001). The district court held the delay justified by the need to transport Zakharov 1620 nautical miles to the United States. The district court found that "[w]ith the *Svesda Maru* in tow, the ships proceeded to the nearest United States port, San Diego, and made no stops along the way." A federal magistrate judge found probable cause to support the complaint filed against Zakharov the day that he arrived in San Diego. The district court's finding that Zakharov was presented to the magistrate without unnecessary delay was not clearly erroneous, and we affirm its ruling.

IV

Zakharov asserts that the government failed to present sufficient evidence to sustain his convictions. We review de novo the district court's denial of a motion for acquittal under Federal Rule of Criminal Procedure 29. *United States v. Johnson*, 357 F.3d 980, 983 (9th Cir. 2004). We review evidence presented against the defendant in "the light most favorable to the [g]overnment" to determine "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation and quotation omitted).

**[10]** "To prove a conviction for conspiracy, the government must establish that [the defendant] 'had knowledge of the

conspiracy and acted in furtherance of it.' " *United States v. Messer*, 197 F.3d 330, 341 (9th Cir. 1999) (quoting *United States v. Wiseman*, 25 F.3d 862, 865 (9th Cir. 1994) (citations, quotation, and emphasis omitted)). Where evidence establishes the existence of a conspiracy, that evidence suffices to support a conviction "if the government is able to establish even a slight connection with the conspiracy beyond a reasonable doubt." *Id.*

Conviction for the underlying substantive crime of possession of cocaine with intent to distribute aboard a vessel may be based on aider and abettor liability. *Klimavicius-Viloria*, 144 F.3d at 1263. We may infer specific intent to distribute from a large quantity of cocaine. *Id.* The United States "must show more than mere participation; the defendant must intentionally assist in the venture's illegal purpose." *Id.* (quotation, citation, and alteration omitted). Knowing participation may be established by factors including:

> a long voyage on a small vessel evincing a close relationship between captain and crew; suspicious behavior or diversionary maneuvers before apprehension; attempts to flee; inculpatory statements made after apprehension; witnessed participation as a crewman; obviousness of the contraband; or absence of equipment necessary to the intended use of the vessel.

*Perlaza*, 439 F.3d at 1175 (quoting *Klimavicius-Viloria*, 144 F.3d at 1263).

**[11]** Zakharov's convictions are clearly supported by sufficient evidence. Two DEA agents testified as to Zakharov's statement that he was aware of the cocaine, that the entire crew had knowledge of the cocaine, and that they were to be paid $20,000 each for the voyage. This testimony, supported by the circumstantial evidence surrounding the seizure of cocaine on the *Svesda Maru* and other similar seizures, is suf-

ficient to establish that a major drug-smuggling conspiracy existed and to show specific intent and knowing participation. Specifically, Zakharov was working on a fishing boat when it was readily apparent that the fishing vessel was not doing much fishing.[7] *See Perlaza*, 439 F.3d at 1175-76 ("[C]ourts have found knowing participation in a maritime narcotics-trafficking scheme when a ship's asserted legitimate purpose *appears to be a ruse*." (quoting *Klimavicius-Viloria*, 144 F.3d at 1264) (alteration omitted)). "[A]ny rational trier of fact could have found" the evidence sufficient to sustain Zakharov's convictions. *Id.* at 1175 (citation omitted).

V

Zakharov argues that the district court erred in determining his ineligibility for a minor role adjustment or for relief under the safety valve provision pursuant to 18 U.S.C. § 3553(f). We review both of these factual determinations for clear error. *United States v. Rodriquez-Cruz*, 255 F.3d 1054, 1060 (9th Cir. 2001) (minor role); *United States v. Washman*, 128 F.3d 1305, 1307 (9th Cir. 1997) (safety valve). The defendant holds the burden of demonstrating by a preponderance of the evidence that he qualifies for a minor role reduction or for safety valve treatment. *United States v. Ladum*, 141 F.3d 1328, 1348 (9th Cir. 1998); *United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996).

The district court denied Zakharov's request for a minor role adjustment because the offense involved a large quantity of drugs. We hold that the district court's denial of the minor role adjustment was not clearly erroneous. The court reason-

---

[7]The boarding team noted that (1) the bait aboard the ship was frozen solid and "appeared to have been there for quite a long time;" (2) there were only about twelve fish on board of the size that would normally be caught by professional fishermen; (3) the amount of fish on board was inconsistent with the time that the vessel had been underway; and (4) the large fish were frozen and in a decomposing state.

ably concluded that persons assisting in the transportation of such a large quantity of cocaine generally do not play a minor role, particularly when the drugs are transported by sea. *See United States v. Murillo*, 255 F.3d 1169, 1179 (9th Cir. 2001).

The district court similarly determined that Zakharov was not entitled to relief under the safety valve provision. The court explained that Zakharov did not sufficiently cooperate with the government and therefore failed to carry his burden that he told the government everything he knew about the offense pursuant to 18 U.S.C. § 3553(f)(5). Again, the court's denial of Zakharov's request for leniency was not clearly erroneous. *See United States v. Arrington*, 73 F.3d 144, 148 (9th Cir. 1996).

**[12]** We also note that the district court's findings that Zakharov did not cooperate with the government, and was therefore ineligible for a reduced sentence under 18 U.S.C. § 3553(f), did not violate Zakharov's Sixth Amendment rights. *See United States v. Labrada-Bustamante*, 428 F.3d 1252, 1262-63 (9th Cir. 2005) (holding that the "safety valve" provision of 18 U.S.C. § 3553(f) is not unconstitutional under *Apprendi*, 530 U.S. 466, or *Blakely v. Washington*, 542 U.S. 296 (2004)). However, because we cannot reliably determine from the record whether the sentence would have been materially different had the district court known that the Sentencing Guidelines were advisory when the sentence was imposed, a limited remand is appropriate. *See Ameline*, 409 F.3d at 1084-85.

## VI

The MDLEA is constitutional as applied to Zakharov and did not change our longstanding rule that the constitutional nexus inquiry is a matter for the district court's determination. The district court did not err in finding a sufficient nexus between the United States and Zakharov's drug-smuggling activities. Therefore, its exercise of jurisdiction over Zak-

harov comported with all due process requirements. Furthermore, the district court properly denied Zakharov's motion to suppress evidence of his confession, and sufficient evidence existed to support his convictions. We affirm Zakharov's convictions and grant a limited remand to permit the district court to reconsider the sentence pursuant to *Ameline*.

Conviction AFFIRMED; sentence REMANDED.