**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50028 |
| Plaintiff - Appellee, | D.C. No. 3:07-CR-03408-BEN-1 |
| v. | |
| LUIS ENRIQUE CALDERON-QUINONEZ, | MEMORANDUM [*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted January 13, 2010
Pasadena, California

Before: GOODWIN, CANBY, and FISHER, Circuit Judges.

Luis Enrique Calderon-Quinonez ("Calderon") was found guilty of

importation of cocaine and possession of cocaine with intent to distribute after a

stipulated-facts bench trial. The district court sentenced Calderon to a 97-month

term of imprisonment, five years of supervised release, fined him $808 and added a

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

special assessment of $200.  Calderon appeals the denial of his motion to suppress, as well as two aspects of his sentence.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

The district court did not err in denying Calderon's motion to suppress.[1]  The record does not support Calderon's contention that the district judge acted as a witness in violation of Federal Rule of Evidence 605.  Furthermore, denial was proper because Calderon's arrest and the search and seizure that followed it were supported by probable cause.  The first search of Calderon's vehicle upon his arrival at the Port of Entry in Calexico, California, was a proper border search.  *See United States v. Kessler*, 497 F.2d 277, 279 (9th Cir. 1974) ("[A] car and its passengers are subject to search without probable cause upon their entry to this country.").  As a result of this search, the arresting officer knew that several packages of white powder wrapped in duct tape were hidden behind the right rear quarter panel of Calderon's vehicle, providing probable cause to arrest Calderon for the crime of importing cocaine and to seize the packages.  Thus, even if the district court, in concluding that there was probable cause to arrest, improperly

---

[1] We review de novo the district court's determination of probable cause, as well as alleged violations of Federal Rule of Evidence 605.  *See Ornelas v. United States*, 517 U.S. 690, 699 (1996) (probable cause); *United States v. Nickl*, 427 F.3d 1286, 1293 (10th Cir. 2005) (Rule 605).

2

relied upon other factors for which there was an insufficient foundation, such as a drug dog alert and a field test of the white powder, this error was harmless. It also is of no consequence that Calderon was not immediately arrested, but rather was permitted to enter the United States under surveillance for a period of minutes before he turned around and attempted to return to Mexico. He was arrested at the port of entry by the same officer who had conducted the initial search and nothing had undermined the officer's probable cause to arrest Calderon for having committed a crime in the officer's presence. Finally, the seizure of the cocaine in Calderon's vehicle following the arrest was proper either as a border search or because it was supported by probable cause.

Nor does the district court's denial of a minor role adjustment to Calderon's guidelines calculation require a remand. *See* U.S.S.G. Sentencing Guidelines Manual § 3B1.2(b) (2007).[2] Even if the district court erroneously compared Calderon to the typical drug courier instead of to co-participants in his offense, any error was harmless. The record reflects that Calderon had been paid to conduct several "dry runs" across the border and that Calderon was apprehended with a

---

[2] We review for clear error the district court's finding that Calderon is not entitled to a downward adjustment for his purported minor role in the offense, *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1112 (9th Cir. 2002), and we do not reverse if an error in application of the guidelines was harmless, *see United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006).

3

substantial quantity of narcotics. *See United States v. Davis*, 36 F.3d 1424, 1436-37 (9th Cir. 1994) (defendant who was more than a simple courier of drugs did not play a minor role in the offense); *United States v. Zakharov*, 468 F.3d 1171, 1181 (9th Cir. 2006) (district court did not clearly err by denying a minor-role adjustment on the basis of the large quantity of drugs involved). Further, the district court did not clearly err in rejecting Calderon's assertions that he believed that the vehicle he was driving contained marijuana, not cocaine. *United States v. Ocampo*, 937 F.2d 485, 491 (9th Cir. 1991) ("[T]he district court was entitled to disbelieve [the defendant's] self-serving descriptions of his own involvement[.]"). On this record, Calderon was ineligible for the adjustment because he was not "'substantially' less culpable than his . . . co-participants," *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006). Any legal error the district court may have committed in reaching that conclusion was harmless.

Finally, the district court did not clearly err in assessing an $808 fine, to be paid from Calderon's future earnings in the Inmate Financial Responsibility Program ("IFRP").[3] In *United States v. Haggard*, we affirmed the district court's imposition of a $4,000 fine where the court found that the defendant could pay the

---

[3] We review for clear error the district court's determination that Calderon has the ability to pay a fine. *United States v. Brickey*, 289 F.3d 1144, 1152 (9th Cir. 2002).

4

fine by working in the IFRP. *See* 41 F.3d 1320, 1329 (9th Cir. 1994). Although the district court here did not explain the particulars of the IFRP on the record, it is apparent that the court understood that the program would provide Calderon with a source of income while serving his prison sentence, enabling him to pay this modest fine. *See United States v. Taylor*, 984 F.2d 618, 622 (4th Cir. 1993) ("The courts are presumed to have some passing familiarity with the conditions of confinement at a federal prison, including how much prisoners get paid.").

**AFFIRMED.**