Justice DURHAM,
concurring in the result:
153 I concur in the result the majority reaches, and I also concur with the reasoning in Part ILA of its opinion. I disagree, however, with the majority's reasoning in Part II.B. Utah Code section 78B-6-111 does not limit its application to sexual conduct that occurred in Utah or between Utahns; rather, it applies to all fathers whose paternal rights are based on sexual conduct that would be illegal if it occurred in Utah. It therefore applies to Mr. Nevares.
[ 54 However, although Mr. Nevares's sexual conduct with M.L.S. would constitute a felony under Utah law, it was legal where it occurred. Because Mr. Nevares did not commit a crime by conceiving a child with M.L.S., he has a constitutionally protected right to participate in the child's upbringing that can only be foreclosed if he fails to assert it or if he is unfit to be a parent. For this reason, I would hold that section 111 is unconstitutional as applied to Mr. Nevares as a matter of substantive due process.
I. SECTION 111 APPLIES TO SEXUAL CONDUCT OUTSIDE OF UTAH
T55 Utah Code section 78B-6-111 provides as follows:
[TThe consent of a biological father [is not] required in connection with an adoption proceeding, in cases where it is shown that the child who is the subject of the proceeding was conceived as a result of conduct which would constitute any sexual offense described in Title 76, Chapter 5, Part 4, regardless of whether the biological father is formally charged with or convmted of a criminal offense.
The application of this statute to Mr. Ne-vares thus depends on a single question: "would [Mr. Nevares's conduct] constitute any sexual offense described in Title 76, Chapter 5, Part 4"?
11 56 Turning to Title 76, Chapter 5, Part 4, I find a sexual offense titled "unlawful sexual activity with a minor." The statute "de-sceribe[s]" this offense quite straightforwardly:
A person commits unlawful sexual activity with a minor if, under cireumstances not amounting to [a more serious sexual crime], the actor:
(a) has sexual intercourse with the minor....
Urax Cop® § 76-5-401(2). The statute defines "minor" as "a person who is 14 years of age or older, but younger than 16 years of age." Id. § 76-5-401(1).
157 Five years ago, M.L.S. was fifteen, and Mr. Nevares had sexual intercourse with her. Having sex with a fifteen-year-old "constitute[s]" unlawful sexual activity with a minor. Therefore, under section 111, Mr. Ne-vares's consent is not "required in connection with [this] adoption proceeding." Id. § 78B-6-111.
A. Canons of Construction
(58 The above plain-language reading of the statute is simple, clear, faithful to the text, not absurd, and fully consistent with the express purposes of the Utah Adoption Act. See id. § T8B-6-102. It is simply the best reading of the statute, and I have no doubt that, insofar as the legislature considered this issue at all, my reading is the one it intended.
T 59 The majority disagrees. I cannot call it irrational for doing so. I acknowledge that section 111 does not explicitly state that the location of the father's conduct is irrelevant. I also acknowledge that the statute's subjunctive phrasing-"conduct which would constitute"-is less than perfectly clear, though I do not see any plausible interpretation of that phrasing that supports the majority's conclusions.
T 60 Ultimately, the majority and I agree on the outer boundaries of what the statute might mean. We agree that, at a minimum, a father's conduct must satisfy the elements of a sexual offense-both actus reus and mens rea-for section 111 to apply. On the other extreme, we agree that a father does not need to be convicted of a sexual offense for section 111 to apply. Our dispute concerns whether the statute requires some *733 thing more than the elements of the offense, but less than actual prosecution and conviection. The majority insists that it does, and it defends this position with a whole battery of canons: expressio unius, the canon against extraterritorial effect, and the constitutional avoidance canon. I find none of them persuasive.
1 61 I find the expressio unius argument unpersuasive simply because expressio unius is an unpersuasive canon.[1] In fact, it is a formal propositional fallacy,[2] and its forensic weakness is on full display here. In the majority's hands, expressio unius turns a clause saying "prosecution and conviction are not required" into a clause saying "everything short of prosecution and conviction is required." See supra 1130-34. These two clauses are neither logically nor legally equivalent, and there is no reason to presume that a legislature that enacted the one also intended to enact the other.
I 62 The presumption against extraterritorial effect is a stronger argument, as applying section 111 would indisputably attach legal consequences to Mr. Nevares's conduct outside Utah. And if this were the first time the effect of the Utah Adoption Act on out-of-state fathers had come into question, I would seriously consider the notion that the Act should be read in light of the background principle of law expressed by this canon.
T 63 That said, however, this canon is not constitutionally required but merely a guide to the legislature's intent, and I see no reason to imagine that the legislature intended us to apply a clear statement rule to determine the Adoption Act's extraterritorial application. Why should it have? We have never applied a "clear statement of extraterritoriality" requirement to its statutes before, and we have certainly never done so in an adoption case. To do so now, after the Adoption Act's substantial history of interpretation and amendment, would be like a child deciding in the middle of his chores that if his mother had really wanted him to take out the trash, she would have said, "Simon says."
[ 64 Reading the Utah Adoption Act as a whole, I find it clear that (1) the legislature understands the Act to apply to out-of-state fathers whose children are adopted in Utah, (2) that it is aware that the Act's application to such fathers gives rise to due process problems, and (8) that in order to avoid these due process problems, while still pursuing its goal of speed and finality in adoptions, it has exempted some out-of-state fathers (not all) from some of the Adoption Act's provisions (but not all). These exemptions do not include an exemption from section 111, and to create one would violate one of the majority's own canons: the canon against reading limitations into a statute that are not apparent on the statute's face. We should not upset the compromises the legislature has reached on this issue unless they are actually unconstitutional.
(65 Thus, leaving constitutional issues aside for a moment, section 111 has a single best reading: its application does not require anything more than that a father's conduct satisfies the elements of a sexual offense under Utah's substantive criminal law. It does not incorporate any of the procedural law that would apply if Utah attempted to prosecute Mr. Nevares, and the procedural law that it does not incorporate includes the law governing Utah's criminal jurisdiction.[3] *734 The text of Utab's jurisdictional statute further supports this conclusion: it does not purport to establish jurisdiction as an element of every offense or to limit, in some abstract way, the applicability of Utah law to conduct in other states. Rather, it merely defines the class of persons who are "subject to prosecution" in Utah. Utan Code § 76-1-201(1).
B. Constitutional Avoidance
166 I am persuaded that the real reason for the majority's decision is the constitutional avoidance canon. And again, I cannot call the majority's decision irrational. The procedural due process issue that concerns the majority was raised only in the last pages of Mr. Nevares's reply brief, and the respondents have had no opportunity to refute it in writing. Even if I shared the majority's constitutional concerns about section 111, I would certainly hesitate to invalidate it on the basis of such minimal argument.
T67 Nevertheless, I think the majority's constitutional concerns are misplaced. That is not to say that section 111 can constitutionally apply to Mr. Nevares-it cannot, see infra Part II1-but that the majority is wrong about the reasons for its unconstitutionality in this case and about the seope of the constitutional problem.
1 68 By my reading, the majority's constitutional analysis is based less on any relevant precedent than on two broad principles of due process law: that Utah may not punish Mr. Nevares for conduct lacking "a significant nexus" with our state, and that section 111 should not apply to Mr. Nevares because he had no notice of it when he had sex with M.L.S. Neither of these principles is groundless, but I believe the majority misapplies them. If it did not, it would not believe they were relevant to this case.
T69 As to the majority's "significant nexus" principle, I agree that Utah "[must] demonstrate that there exists a sufficient nexus between the conduct condemned and [the state of Utah] such that the application of the statute would not be arbitrary or fundamentally unfair to the defendant." Supra ¶ 40 (first alteration in original) (quoting United States v. Medjuck, 156 F.3d 916, 918 (9th Cir.1998)). But this is not a criminal case, and Mr. Nevares is not a "defendant." Rather, because Utah has jurisdiction over the child to be adopted, its law governs the adoption, regardless of whether the parties with interests at stake have ever heard of Utah. See RestatEmENT (SEconp) or CoNFPLICT OF Laws § 289 (1971) ("A court applies its own local law in determining whether to grant an adoption.").
170 As to the majority's "notice" principle, I agree that a person cannot be held criminally liable for conduct unless she has notice that the conduct is criminal, and this is among the reasons why section 111 cannot constitutionally apply to Mr. Nevares. See infra Part II. But a different father, whose sexual conduct was criminal where it occurred, would not be able to avoid section 111 by showing he lacked notice of it. Notice of the conduct's eriminality would be necessary, but perfect notice of the conduct's consequences would not.
171 If this were not the case, then (for example) a statute establishing a sex offender registry could not apply to someone who committed his sexual offense before it was enacted, or to someone who committed his offense in a jurisdiction without such a law. The same would be true of laws prohibiting felons from carrying weapons or from voting. In each of these cases, the law attaches consequences to people's actions even though they had no notice of the law when they acted. And yet, in each of these cases, due process allows courts to enforce the consequences.[4]
*735 172 Ultimately, my disagreement with the majority on these points boils down to a difference of opinion over the purpose and effect of section 111. The majority sees seetion 111 as a "law regulating sexual activity" that "impos[es] a substantial penalty aimed at disincentivizing such activity." Supra ¶ 45. It is no such thing. The legislature has made the purposes of the Utah Adoption Act quite clear, see Urax Code § 78B-6-102, and those purposes do not include regulating, penalizing, or disincentivizing sexual conduct. Rather, they have primarily to do with the best interests of the child, with the finality of adoptions, and with balancing "the rights and interests of all parties affected by an adoption proceeding." Id. § 78B-6-102(8).
T 73 Read in this light, section 111 is not a penal statute at all. Rather, it is a statutory enactment of the constitutional principle the Seventh Circuit applied in v. Mattox: that criminal conduct does not give rise to legal rights, and that a man who becomes the biological father of a child through criminal conduct does not thereby gain a right to a relationship with the child. 84 F.3d 894, 900 (7th Cir.1996). Section 111 does not purport to deprive Mr. Nevares of rights he already possesses, the way a penal statute might deprive him of liberty or property. Rather, section 111 denies that Mr. Nevares has any rights at all in this context, the way our property law might deny that he owns a particular house. And had Mr. Nevares ac tually committed a crime by conceiving a child with M.L.S., this denial would be perfectly constitutional.
II. SECTION 111 IS UNCONSTITUTIONAL AS APPLIED TO MR. NEVARES
174 Ultimately, the reason section 111 cannot constitutionally be applied to Mr. Ne-vares is much simpler than the very abstract principles the majority appeals to. In a sentence: substantive due process gives Mr. Ne-vares a constitutionally protected right to participate in his child's upbringing, and Utah may only extinguish that right if Mr. Nevares fails to assert it, or if he is unable or unfit to exercise it.
T75 Although the precise boundaries of unmarried fathers' due process rights are much disputed, those boundaries do not concern us here. Section 111, correctly interpreted, would allow Mr. Nevares no rights whatsoever with respect to the adoption of his child. If Mr. Nevares had actually committed a crime by having sexual relations with M.L.S., rather than merely engaging in "conduct which would constitute" a sexual offense in Utah, Urax Conr® § 78B-6-111, then this denial of rights would be perfectly constitutional. "[Nlo court has gone so far as to hold that the mere fact of fatherhood, consequent upon a criminal act ... [and] not cemented ... by association with the child, creates an interest that the Constitution protects in the name of liberty." Peña v. Mattox, 84 F.3d 894, 900 (7th Cir.1996); see also In re J.M.S., 2015 UT 35, ¶¶ 32-38, 345 P.3d 709 (Durham, J., dissenting).
T76 But Mr. Nevares's conduct cannot be considered a erime because, though prohibited by Utah, it was legal where it occurred. The present case is therefore governed by a doctrine the U.S. Supreme Court applied in Quilloin v. Walcott: the state may not terminate an unwed father's rights in his child "without some showing of unfitness," 434 U.8. 246, 255, 98 S.Ct. 549, 54 LEd.2d 511 (1978), unless the father has had an opportunity to assert those rights and has failed to do so, see id. at 255-56, 98 S.Ct. 549. Mr. Nevares has not slept on his rights, and he has not been determined unfit. He must therefore be allowed to contest the adoption.
III, UTAH L&W SHOULD APPLY
I 77 The majority seeks to soften the effect of its decision by allowing the victims of sexual abuse to contest their abusers' paternal rights using the laws of the states where they were abused. Supro ¶¶ 48-49. It also points out that such an abuser's paternal rights could potentially be terminated upon a showing that he was unfit for parenthood. Supra ¶ 50.
T 78 This is better than nothing, I suppose, even if the basis for applying Colorado law is weak. But it is ultimately inadequate protection for Utah citizens who have been impregnated by sexual abuse in other states.
*736 179 To begin with, it is inadequate because not all states have laws like Colorado's. Nineteen states and the District of Columbia have no statutes restricting the paternal rights of fathers who conceive children through rape. Moriah Silver, The Second Rape: Legal Options for Rape Survivors to Terminate Parental Rights, 48 Fam. L.Q. 515, 526-27 (2014). Of the thirty-one states that do, many provide less protection for rape survivors than is needed-in particular, many states (like Colorado) require the father to be convicted of sexual assault before a court may cut off his paternal rights. Id. at 529-81. In such states, the ability of a rape victim to protect her child from her rapist depends on the willingness and ability of police and prosecutors to secure a conviction. If police mistakes lead to the exclusion of vital evidence, or an understaffed prosecutor's office offers a lenient plea bargain, she is left defenseless.
180 To deal with situations where laws protecting victims are inadequate or absent, the majority points to a failsafe: a court's ability to terminate a father's rights upon a showing of unfitness for parenthood. Supra ¶ 47. Beyond its optimistic assumption that rapist fathers will easily be found unfit, this failsafe is inadequate because it underestimates the harm done when a sexual abuser is permitted even to intervene in adoption proceedings. The ability to hold up the adoption, with the threat that he might block it entirely, gives the abuser powerful leverage to extract concessions from his victim. At the least, it allows him to foree his vietim into repeated contact with him so long as litigation continues.
4 81 The legislature, perceiving these problems, drew a bright line: no father who has conceived a child through sexual assault may contest that child's adoption, regardless of whether he is fit for parenthood, and regardless of whether his guilt can be established under the stricter procedures and higher burden of proof of a criminal trial. See Urax Cope § 78B-6-111. Moreover, the legislature has every right to draw this line, at least where the child and its mother are citizens of Utah whom the state has a responsibility to protect. Its ability to protect them should not depend on the laws of other states.
IV. CONCLUSION
T82 Because the majority has grave constitutional concerns, it turns a statute applying to "conduct that would constitute an offense in Utah" into a statute applying only to conduct that "could ... sustain[ ] a criminal charge" in Utah. Supra ¶ 28. In order to do so, it turns a clause stating that section 111 does not require formal prosecution and conviction into a clause stating that section 111 requires everything but formal prosecution and conviction. Further, it pretends that the legislature assumed we would apply a canon that we nearly never apply.
€83 But for all that, I acknowledge the wisdom of the majority's decision to apply the constitutional avoidance canon in this case rather than decide the constitutional issues it finds so worrying. True, its worries are unnecessary, as a clear and straightforward answer is available: substantive due process clearly protects Mr. Nevares from section 111, while no constitutional doctrine at all protects a father whose paternal rights result rest entirely from on a sex crime. But I nevertheless applaud the majority for penciling its concerns into a state statute, where the legislature can erase them if it desires, instead of chiseling them in federal constitutional stone.
{84 When this issue returns to us, as I suspect it will, I hope the court will keep in mind Part III of my opinion above. Utah has compelling reasons to protect its citizens who have been victims of sexual abuse, regardless of where they were abused. An interpretation of the Due Process Clause under which this compelling interest must always bow to rapists' right to "notice"-that is, their imaginary right to know before they commit rape whether they will be able to raise the resulting offspring-is, to put it mildly, unlikely to be correct.

. "Far from being a rule, [expressio unius ] is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends on the particular circumstances of context." BLACK'S LAW DICTIONARY 661-62 (9th ed.2009) (quoting REED DICKERSON, THE INTERPRETATION AND APPLICATION OF STATUTES 234-35 (1975)).

. Under expressio unius, "if A, then B" implies "if not A then not B." Logicians refer to this fallacy as "denying the antecedent." To be sure, outside the realm of formal logic, there are contexts in which "if A then B" is strong evidence for "if not A then not B," but I see no reason to believe this is one of those contexts.

. The majority claims that, in the relevant sense, "jurisdiction is substantive, not procedural" because it must be proven by the prosecution in order for the prosecution to obtain a conviction. Supra ¶ 32 n. 4. If the majority means that the prosecution must always present evidence of jurisdiction to the jury in order to obtain a conviction, it is incorrect: the Utah Code establishes that "[if no jurisdictional issue is raised, the pleadings are sufficient to establish jurisdiction." See Utah Cope § 76-1-201(5)(a). Jurisdiction is *734 clearly a matter of procedure-no part of a substantive criminal offense could be presumed satisfied based merely on the pleadings.

. I do not mean here to endorse a general principle that legislatures may attach whatever consequences they wish to criminal conduct, without notice, so long as there is notice that the conduct is criminal. But the opposite general principle that legislatures may never attach civil consequences to criminal conduct without giving advance notice of those specific consequences-is clearly false, and it is this general principle on which the majority's reasoning depends.